[No. C043096. Third Dist. Apr. 19, 2004.]

MORRIE LONDON, Plaintiff and Respondent, v.
DRI-HONING CORPORATION et al., Defendants and Appellants.

COUNSEL

Wright & Britton, Harold C. Wright and John A. Britton for Defendants and Appellants.

Siegel & Yee, Dan Siegel and Noreen Farrell for Plaintiff and Respondent.

OPINION

**DAVIS, J.**—In this appeal, we conclude that a motion for discovery monetary sanctions may be made after an underlying motion to compel further response to an inspection demand is litigated. (Code Civ. Proc., § 2031, subd. (m).)[1] We will accordingly affirm the trial court's order imposing over $6,000 in monetary sanctions. (See § 904.1, subd. (a)(12).)

## BACKGROUND

Plaintiff Morrie London (London) sued his former employer, Dri-Honing Corporation (Dri-Honing), and its president, Herman Kaiser, for wrongful termination, age and physical handicap discrimination, fraud, and other causes of action.

At the time of his termination, London managed Dri-Honing's copper shop and had worked at Dri-Honing for nearly nine years. Dri-Honing claims the primary reason for terminating London's employment was his insubordination on March 17, 30, and 31, and April 3 and 7, 2000. Dri-Honing also noted that London's failure to operate the copper shop profitably and failure to maintain adequate inventory influenced the termination.

---

[1] Further undesignated section references are to the Code of Civil Procedure.

Through an inspection demand, London sought to inspect documents related to the copper shop's profitability and inventory. (§ 2031.) Dri-Honing refused to produce most of these documents. It argued they were irrelevant and included confidential trade secrets. London moved to compel further response to his inspection demand. (§ 2031, subd. (m).)

In ruling on the motion to compel, the trial court observed, "[Dri-Honing] can't have it both ways. [Dri-Honing] can't buttress the reasons for termination with the [copper shop's] poor profitability record . . . and failure to maintain adequate [inventory] while in the next breath denying [London's] discovery requests aimed at these issues based upon the argument that those issues are too remote or collateral to be investigated." (As for the trade secret issue, the trial court had granted a protective order.)

The trial court gave Dri-Honing a choice. Dri-Honing could file an election stating it would rely only on evidence of London's insubordination on or after March 1, 2000. Or, Dri-Honing could fully comply with London's inspection demand as to the requested documents. Dri-Honing chose to file the evidentiary limitation.

The trial court asked London to set forth his fees and costs in litigating the motion to compel so the court could impose appropriate monetary sanctions against Dri-Honing pursuant to section 2031, subdivision (m). London complied, but Dri-Honing objected, arguing an award of sanctions absent notice and an opportunity to be heard violated due process. Accepting this argument, the trial court refused to award sanctions absent a noticed motion conforming to the requirements of section 2023.

London promptly filed a noticed motion requesting discovery monetary sanctions against Dri-Honing. Dri-Honing argued that this motion was untimely and, regardless, that it had successfully opposed London's motion to compel further response. After hearing, the trial court granted the sanctions motion, directing Dri-Honing to pay $6,045.45 in costs and fees to London. Dri-Honing appealed. (§ 904.1, subd. (a)(12).)

## DISCUSSION

1. *Request for Discovery Monetary Sanctions Under Section 2031, Subdivision (m)*

Dri-Honing contends that London's request for discovery monetary sanctions was untimely because it was not set forth in the motion to compel further response under section 2031, subdivision (m). We disagree.

Two statutes are implicated: section 2023, which generally identifies the misuses of the discovery process and the types of discovery sanctions; and section 2031, which specifically governs the particular discovery method at issue here—document production and inspection. Subdivision (b) of section 2023 and subdivision (m) of section 2031 are the specific provisions at issue.

In pertinent part, section 2023, subdivision (b), provides:

"(b) To the extent authorized by the section governing any particular discovery method . . . , the court, after notice . . . and . . . opportunity for hearing, may impose the following sanctions against any one [*sic*] engaging in conduct that is a misuse of the discovery process.

"(1) The court may impose a monetary sanction . . . [i.e.,] the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. . . . If a monetary sanction is authorized by any provision of this article, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."

In subdivisions (b)(2) through (b)(5), section 2023 identifies the other types of discovery sanctions. These are, respectively, issue, evidence, terminating, and contempt sanctions. Subdivision (c) of section 2023 adds that "[a] request for a sanction shall, in the notice of motion, identify every person, party, and attorney against whom the sanction is sought, and specify the type of sanction sought. The notice of motion shall be supported by a memorandum of points and authorities, and accompanied by a declaration setting forth facts supporting the amount of any monetary sanction sought. "

Section 2031 governs the particular discovery method in this case, which is inspection of "documents, tangible things, and land or other property." (§ 2031, subd. (a).) Section 2031, subdivision (m), outlines the process for moving to compel further response to an inspection demand and the available sanctions for unsuccessfully making or opposing such a motion. It states in pertinent part:

"(m) If the party demanding an inspection[] [receives what it deems to be an incomplete, inadequate, or evasive] response to an inspection demand . . . , that party may move for an order compelling further response to the demand. . . .

"Unless notice of this motion is given within 45 days of the service of the response, . . . the demanding party waives any right to compel a further response to the inspection demand.

"The court shall impose a monetary sanction under Section 2023 against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel further response to an inspection demand, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."

Dri-Honing claims, and we agree, that section 2023 and the particular discovery method statute here, section 2031, must be read together to determine what types of sanctions can be imposed and when. Section 2023, subdivision (b), directs the reader to the particular discovery method statute, e.g., section 2031, by stating, "[t]o the extent authorized by the section governing any particular discovery method . . . ." In circular fashion, section 2031, subdivision (m), directs the reader back to section 2023, by stating, "[t]he court shall impose a monetary sanction under Section 2023 against any party . . . who unsuccessfully makes or opposes a motion to compel further response to an inspection demand . . . ."

The pivotal language to be interpreted here is the language in section 2023, subdivision (b), "[t]o the extent authorized by the section governing any particular discovery method . . . , the court, after notice . . . and . . . opportunity for hearing, may impose the following sanctions[.]" (Italics added.)

■ Our objective in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. (Professional Engineers v. Wilson (1998) 61 Cal.App.4th 1013, 1019 [72 Cal.Rptr.2d 111].) The first thing we do is read the statute and give the words their ordinary definitions unless special definitions are provided. (Id. at pp. 1019–1020.) If the meaning of the words is clear, then the language controls; if not, we may use various interpretive aids. (Id. at p. 1020.)

The above italicized language from section 2023, subdivision (b), is ambiguous. Does it mean to absorb all the procedural requirements set forth in the particular discovery method statute, or does it simply refer to whether a type of sanction is authorized for a specific abuse in the particular discovery statute?

Dri-Honing interprets this language of section 2023, subdivision (b), as absorbing the procedural requirements of the applicable discovery method statute—here, section 2031. Dri-Honing argues that since a motion to compel further response under section 2031, subdivision (m), must be made within a 45-day time limit, so too must the movant's request for monetary sanctions related to that motion; therefore, such a request must be part of that motion. We see it differently.

On the issue of monetary sanctions, section 2031, subdivision (m), states that a party who "unsuccessfully makes or opposes a motion to compel

further response to an inspection demand" shall be sanctioned under section 2023 unless doing so is unjustified. (Italics added.) It follows that any party who successfully makes or opposes a motion to compel further response can initiate sanctions by noticing the other party, per section 2023. Nothing in section 2031, subdivision (m), or elsewhere, suggests that the procedure for requesting discovery sanctions is different for a party who successfully makes a motion to compel further response than for a party who successfully opposes such a motion to compel. But Dri-Honing's interpretation of section 2031, subdivision (m), and section 2023, subdivision (b), leads to unequal rules for parties who successfully make such a motion and parties who successfully oppose such a motion, both of whom may be entitled to sanctions under section 2031, subdivision (m).

Dri-Honing's interpretation does not adequately account for the party opposing the motion. It leaves two options. The first option is that the opposing party must comply with the 45-day time limit that section 2031, subdivision (m), imposes on a motion to compel further response. Under this option, either the opposing party would have to wait to request sanctions until the movant filed the motion to compel, which could happen as late as the 45th day, or, anticipatorily, it would have to file a notice of its intent to seek sanctions should the party seeking discovery unsuccessfully make a motion to compel. The second option is that the opposing party would not have to comply with the 45-day time limit. It could file its notice of sanctions any (reasonable) time after the moving party filed its motion, regardless of the 45-day time limit.

The first option is unreasonable. It either imposes undue hardship on the opposing party, or requires the opposing party to anticipate that the party seeking discovery will file a motion to compel. The second option may be fairer to the party opposing the motion, but it would impose a time limit on the successful movant's request for sanctions that does not apply to the successful opposing party's sanction request. Given the procedural equality contemplated in section 2031, subdivision (m), this too is unreasonable.

■ In short, Dri-Honing's interpretation would have us read distinctions and requirements into section 2023 and section 2031 that their language does not support. This statutory scheme does not support a construction whereby the ambiguous language of section 2023, subdivision (b), "[t]o the extent authorized by the section governing any particular discovery method . . . , the court . . . may impose the following sanctions," absorbs all the procedural requirements of the particular discovery method statute. A better reading is that this language simply refers to whether a particular discovery method statute authorizes a specific type of sanction (i.e., monetary, issue, evidence, terminating, or contempt sanctions).

The general structure of California's current discovery act, the Civil Discovery Act of 1986 (§ 2016, et seq.; hereafter the Discovery Act), supports this conclusion for two reasons. First, there is an emphasis on imposing discovery monetary sanctions against abusive parties. (2 Witkin, Cal. Evidence (4th ed. 2000) Discovery, § 252, p. 1070; 2 Hogan & Weber, Cal. Civil Discovery (1997) Sanctions, § 15.4, p. 274 (hereafter 2 Hogan & Weber).) The policy is that monetary sanctions *"shall"* be imposed *"unless"* shown to be unjustified. (§§ 2023, subd. (b)(1), 2031, subd. (m), italics added.) By making it more difficult to request and impose such sanctions, Dri-Honing's interpretation runs counter to this policy.

Second, the Discovery Act significantly changed how discovery sanctions were codified. Under the original discovery act, the statutes governing particular discovery methods did not discuss sanctions. (2 Hogan & Weber, *supra,* § 15.2, pp. 269–270.) Rather, a single statute defined the different types of discovery sanctions and explained which of these sanctions were available for each discovery abuse. (*Id.* at p. 270.)

The Discovery Act takes a different approach. Initially, it has a statute, section 2023, which generally identifies the possible discovery abuses and the types of sanctions that exist. (§ 2023, subds. (a), (b).) Then, each statute that governs a particular discovery method specifies which of those sanctions applies to the particular abuses of that method. (See, e.g., §§ 2025, subds. (e)(3), (j)(1)–(3), (n)–(o), (q)(2) [depositions], 2030, subds. (e), (k), (*l*), (m) [interrogatories], 2031, subds. (f), (*l*), (m), (n) [document inspection] 2032, subds. (c)(6)–(7), (f), (g), (h), (j) [physical and mental examinations], 2033, subds. (e), (k), (*l*) [requests for admissions], 2034, subds. (e), (i), (k), (*l*) [exchange of expert witness information]; 2 Hogan & Weber, *supra,* § 15.2, p. 270.) Given the unique parameters of each discovery method, discovery sanctions are available under different circumstances and for different types of abuses in each method's statute.

This structure suggests that the section 2023, subdivision (b) phrase "[t]o the extent authorized by the section governing any particular discovery method . . . , the court . . . may impose the following sanctions" simply refers to whether the discovery method statute authorizes a type of sanction (i.e., monetary, issue, evidence, terminating, or contempt) for a particular misuse of the discovery method. (§ 2023, subd. (b).) This interpretation is further supported by language in subdivision (b)(1) of section 2023, stating that "[i]f a monetary sanction is authorized by any provision of this article, the court shall impose that sanction" unless it is unjust to do so. This language works in tandem with its companion provision at subdivision (b) of section 2023, which states, "[t]o the extent authorized by the section governing any particular discovery method[.]"

This interpretation is also supported by case law. In both *Kuhns v. State of California* (1992) 8 Cal.App.4th 982 [10 Cal.Rptr.2d 773] (*Kuhns*) and *Zellerino v. Brown* (1991) 235 Cal.App.3d 1097 [1 Cal.Rptr.2d 222] (*Zellerino*), the language of section 2023, subdivision (b) involving the phrase "to the extent authorized" was used not to invoke procedural time limits of the governing discovery method statute, but to identify what types of sanctions a given discovery method statute authorized for a particular abuse.

In *Kuhns*, the court stated, "The sanctions listed in section 2023, subdivision (b) are applicable '[t]o the extent authorized by the section governing any particular discovery method . . . .' The particular discovery method involved . . . was an order compelling production and inspection of documents. (Code Civ. Proc., § 2031.) Section 2031, subdivision (m) [now subd. (n)] provides '[i]f a party . . . fails to obey an order compelling inspection, the court may [impose issue, evidence, terminating, or monetary sanctions].' " (*Kuhns, supra,* 8 Cal.App.4th at p. 988, fn. 6.) In *Zellerino*, the court, in the context of the section 2034 discovery method of expert witness disclosure, noted that section 2023, subdivision (b), "limits the permissible sanctions to those 'authorized by the section governing any particular discovery method.' " (*Zellerino, supra,* 235 Cal.App.3d at p. 1114; but see *Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1544–1546 [51 Cal.Rptr.2d 311] [there may be flexibility in the statutory scheme authorizing sanctions when strict adherence to that scheme would be futile and defeat discovery aims].)

The related conclusion that a motion for discovery monetary sanctions may be filed separately from a motion to compel also finds support in case law and secondary sources. In *Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152 [79 Cal.Rptr.2d 641] (*Sherman*), the Court of Appeal concluded that a motion for discovery monetary sanctions was appropriate even after the verdict. There, the defendant concealed evidence throughout the trial. (*Id.* at p. 1162.) It was only after trial was complete, and a chance phone call revealed the defendant's discovery abuses, that the plaintiff could move for monetary sanctions. (*Ibid.*)

The *Sherman* court found monetary sanctions were absolutely mandated. (*Sherman, supra,* 67 Cal.App.4th at p. 1163.) "[C]ommon sense dictates sanctions cannot be pursued before the affected party finds out about the alleged discovery dereliction of his or her opponent. The true facts may not emerge until the end of trial . . . ." (*Ibid.*) Referencing *Sherman*, Witkin notes, "[n]either [Code of Civil Procedure section] 2023 nor any case law mandates that discovery sanctions be imposed before the verdict is rendered." (2 Witkin, Cal. Evidence, *supra,* at p. 1072.)

As for secondary sources, Professor James Hogan, who prepared the Reporter's Notes to the commission that drafted the Discovery Act, interprets

the Discovery Act as contemplating the possibility of separate motions.[2] (2 Hogan & Weber, *supra,* at p. 275; 2 Witkin, Cal. Evidence, *supra,* at p. 859.) Discussing procedures for requesting discovery monetary sanctions, the Hogan & Weber treatise states, "[a] party who seeks a monetary sanction must file a noticed motion. A court denies due process by sanctioning a party or an attorney who lacked notice of efforts to seek the sanction. The party seeking sanctions, however, can satisfy due process by including the notice of intent to seek the sanction in the body of the discovery motion. In whatever motion the notice appears, the moving party must identify every person, party and attorney against whom the sanction is sought." (2 Hogan & Weber, *supra,* at p. 275, fns. omitted.) As Hogan & Weber later notes, "in proper cases, a court may entertain a motion for monetary sanctions apart from a motion to compel. . . ." (2 Hogan & Weber (2003 supp.) § 15.4, p. 31.)

Dri-Honing relies on another treatise, Civil Procedure Before Trial. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2003) (Weil & Brown).) Indeed, Weil & Brown states that "[t]he request for [discovery] sanctions is *not* a separate 'motion' when ancillary to another motion (e.g., to compel answers, etc.)," and that "[t]he Notice of Motion to Compel must contain a request for sanctions . . . ." (Weil & Brown, *supra,* ¶ 8:865, p. 8E-108, ¶ 8:1194, p. 8F-68.2.) However, as London points out, Weil & Brown does not cite any authority for these assertions. For the reasons we have set forth, we disagree with Weil & Brown on this matter.

■ As a final gasp, Dri-Honing states that the "sanctions request must be included in the motion to compel in order to enable the nonmoving party and his attorney to consider whether and in what manner they will oppose the motion." We note that a party is obligated to comply with the discovery statutes cooperatively and in good faith, regardless of what sanctions it may or may not be subject to. The suggestion that a party's cooperation during discovery depends on how heavy the hammer is that hangs above its head is troublesome.

■ In the end, while it may be advisable that a party place its request for monetary sanctions in its section 2031 motion to compel further response, there is no legal requirement to do so.

■ Even though a motion for monetary sanctions may be filed separately from a motion to compel further response under section 2031, timeliness is still important. Dri-Honing is correctly concerned with protecting the Discovery Act's policy interest in speedy resolution of discovery disputes. For this

---

[2] *See People v. Wiley* (1976) 18 Cal.3d 162, 171 [133 Cal.Rptr. 135, 554 P.2d 881] (observing "[w]hen a statute proposed by the California Code Commission . . . has been enacted by the Legislature without substantial change, the report of the commission is entitled to great weight in construing the statute and in determining the intent of the Legislature").

reason, Weil & Brown's advice is sage advice. (Weil & Brown, *supra*, ¶ 8:865, p. 8E-108.) However, whether a request for sanctions is untimely is subject to the trial court's discretion because it is a fact-specific analysis. (See 2 Hogan & Weber (2003 supp.) § 15.4, p. 31; 2 Witkin, Cal. Evidence, *supra*, at p. 1072.) Hogan & Weber observes that a party should seek sanctions as part of its underlying discovery motion because the courts have considerable discretion in defining a request for sanctions as untimely. (2 Hogan & Weber, *supra*, § 15.4, pp. 275–276; see *Colgate-Palmolive Co. v. Franchise Tax Bd.* (1992) 10 Cal.App.4th 1768, 1787–1788 [13 Cal.Rptr.2d 761].)

We conclude that London's separate motion for sanctions was legally authorized, properly noticed, and timely made.

> 2. *Dri-Honing's Additional Arguments: Successful Party; Substantial Justification; Unreasonable and Punitive Amount of Sanctions*

In the event London's motion for sanctions is permissible, Dri-Honing offers three additional arguments against the trial court's order granting sanctions.

First, Dri-Honing claims it either successfully opposed the motion to compel further response because it was not required to produce the documents that London requested, or there was a mixed result on the motion. Dri-Honing notes that London did not secure inspection of the documents it sought because Dri-Honing made an election as to the evidence on which it would rely at trial.

The trial court explicitly found that Dri-Honing unsuccessfully opposed London's motion to compel further response, and rightly so. By electing to limit the reasons it could assert for London's termination, Dri-Honing, in the end, was compelled to make a further substantive response to London's motion to compel. That further substantive response will preclude Dri-Honing from relying on any reason other than the post-February 2000 insubordination in arguing at trial that it justifiably terminated London. There's no way around it: Dri-Honing lost on London's motion to compel.

Second, Dri-Honing suggests that even if it did lose the motion to compel, it was substantially justified in opposing the motion. Dri-Honing claims it was justified because the documents London sought were irrelevant to any material issue in the case. But those documents related to Dri-Honing's alleged reasons for terminating London. Such documents are relevant to a wrongful termination suit. The trial court stated that Dri-Honing's tactics in refusing to comply with London's discovery requests were "an abuse of the discovery process and . . . without substantial justification."

Dri-Honing argues it was justified in that it reasonably suspected London intended to steal trade secrets and compete with it. We are not persuaded. London was bound by the protective order granted by the trial court on May 8, 2002. The trial court did not abuse its discretion in concluding that Dri-Honing unsuccessfully opposed the motion to compel without substantial justification.

Third, Dri-Honing claims the amount of sanctions awarded by the trial court was unreasonable and improperly punitive. In *Ghanooni v. Super Shuttle* (1993) 20 Cal.App.4th 256, 262 [24 Cal.Rptr.2d 501], the appellate court held that the trial court's finding as to reasonable expenses was justified since the opposing party failed to offer contrary evidence. That is the case here. Dri-Honing claims London's itemization of 5.5 hours was an unreasonable driving time for one hearing, but it failed to offer a counterdeclaration supporting this claim.

Dri-Honing also contends that the amount of sanctions was unreasonable because London was not wholly successful on the motion to compel. Because the result was "mixed," Dri-Honing argues, the trial court should have exercised its discretion to apportion sanctions according to whether London completely achieved its goal. (See *Mattco Forge, Inc. v. Arthur Young & Co.* (1990) 223 Cal.App.3d 1429, 1437 [273 Cal.Rptr. 262].) As we noted above, the trial court concluded, and we agree, that London was successful in achieving its goal and that Dri-Honing was unsuccessful in opposing the motion to compel further response.

Finally, Dri-Honing contends that the trial court imposed unreasonable and punitive sanctions by allowing London to make two motions—a motion to compel, and a separate motion for sanctions—and awarding London its full fees on both. Dri-Honing offers no support for this conclusion. Nothing in the record indicates the trial court was doing anything more than complying with the discovery statutes.

## Disposition

The order granting London's motion for sanctions is affirmed.

Blease, Acting P. J., and Robie, J., concurred.