Filed 6/27/22  Archer v. Integon National General Insurance CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| CHRISTINA ARCHER et al., | C093576 |
| Plaintiffs and Appellants, | (Super. Ct. No. CIV 193176) |
| v. | |
| INTEGON NATIONAL GENERAL INSURANCE COMPANY et al., | |
| Defendants and Respondents. | |

This appeal arises from an order imposing sanctions for the intentional destruction of evidence despite a pending demand for inspection of that evidence.

Plaintiffs Christina Archer and Lane Whitney, owners of a home damaged by the 2018 Carr Fire, sued their insurer and claims adjuster for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation related to the handling of their insurance claim.  The key issues in the case include whether the

1

insurer unreasonably refused to investigate and pay covered losses for (1) mold contamination caused by unaddressed water damage to wood flooring; and (2) cleaning and replastering plaintiffs' pool. To investigate plaintiffs' claims, defendants served plaintiffs with a discovery demand to inspect their property. However, during the period between the inspection demand and the date of the inspection, plaintiffs removed their mold-contaminated flooring and had their pool replastered, destroying most of the evidence that defendants planned to inspect. Defendants moved for sanctions based on plaintiffs' misuse of the discovery process. The trial court granted defendants' request for monetary sanctions and for a standard jury instruction on the willful suppression of evidence.

Plaintiffs raise a variety of arguments, attacking the trial court's order as an abuse of discretion. We conclude that none of plaintiffs' arguments have merit, and therefore affirm the order.

BACKGROUND FACTS AND PROCEDURE

Plaintiffs own a home located in Redding, California. In July 2018, plaintiffs' home was damaged by smoke and soot from the Carr Fire. Plaintiffs submitted a claim to their insurer, defendant Integon National General Insurance Company (Integon), which assigned defendant Kathy Jolliff (Jolliff) as the claims adjuster. Shortly after the claim was filed, Integon advanced $15,000 to plaintiffs for covered living expenses and paid approximately $10,000 to arrange temporary housing for plaintiffs.

Jolliff hired Rick Herrington (Herrington), an independent adjuster from CenterPoint Claims Service Inc. (CenterPoint), to inspect plaintiffs' property and prepare a report. Herrington inspected the property on August 14, 2018, and then documented his findings in a covered loss report. Herrington observed soot throughout the house and property, and recommended cleaning of the exterior and interior surfaces, as well as the personal property within the home. He also found that due to the power outage, water had leaked from the refrigerator, causing the wood flooring in the kitchen to warp. In

2

addition, he reported smoke damage to the swimming pool. He noted that plaintiffs had provided an estimate of $26,100 to clean and replaster the pool, but Herrington informed Integon that his research "strongly suggest[ed]" the pool would only require cleaning, not replastering.

In early September 2018, Integon paid plaintiffs $17,609.25 as partial settlement for covered losses based on the CenterPoint covered loss report.[1] Integon claims that it discussed the settlement amount with plaintiffs. But plaintiffs contend they were not told how the settlement amount was calculated and were unsure what it was supposed to cover. In plaintiffs' view, the settlement amount was inadequate for them to repair all the damage, which forced them to delay certain repairs, such as replacing the water-damaged wood flooring.[2]

Dissatisfied with Integon's response to their claim, in October 2018, plaintiffs hired a public adjuster, Skipton & Associates, Inc., (Skipton) to assess the loss and estimate the cost of repairs. In or about December 2018, Skipton provided its estimate of the cost to repair the damage caused by the fire, which exceeded $120,000. Included in Skipton's estimate was the cost to remediate mold that he concluded had spread from the water-damaged wood flooring. Integon received Skipton's estimate, but did not adjust its settlement or perform any additional inspections of the property.

---

[1]     Integon also separately paid plaintiffs $3,677.69 as the estimated cost of cleaning the personal property within the home.

[2]     In plaintiffs' view, the necessary repairs included (1) cleaning the interior and exterior surfaces of the home; (2) replacing the water-damaged flooring; (3) remediating mold contamination caused by the unaddressed water damage to the flooring; (4) replacing the HVAC system; and (5) cleaning and replastering the pool. Plaintiffs claimed that because Integon's settlement amount was inadequate, they were forced to delay replacing the water-damaged flooring, which allowed mold to spread throughout their home.

In August 2019, plaintiffs filed a lawsuit against Integon and Jolliff (collectively, defendants), asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation arising from the handling of plaintiffs' insurance claim. Plaintiffs filed their second amended complaint in late December 2019. Among other things, plaintiffs alleged that defendants failed to thoroughly and properly investigate their claims, misrepresented their rights under the contract, and failed to pay amounts due for losses covered under the contract.

Less than three months later, in March 2020, Integon served plaintiffs with a discovery demand under Code of Civil Procedure section 2031.010 to inspect plaintiffs' home and property.[3] The demand stated that the inspection would include "[v]isual inspection and examination" of all interior and exterior areas; the HVAC system, and pool; "[c]ollection of bulk, air and surface samples for smoke, soot, ash, and mold analysis"; "[t]esting for moisture content"; "[c]ollection of surface and air mold spore samples inside and outside of the building"; and "[m]inor destructive testing."

The inspection originally was scheduled to occur on April 13, 2020. However, due to the COVID-19 pandemic and resulting shelter-in-place orders, it was postponed. In the meantime, in July 2020, plaintiff Christina Archer (Archer) was deposed. During her deposition, Archer testified that neither the pool nor the water-damaged flooring had been repaired, and that plaintiffs still had mold in their home.

On August 4, 2020, Integon served an amended property inspection demand, rescheduling the inspection for September 11, 2020. Five weeks later, Integon's counsel sent an e-mail to plaintiffs' counsel confirming the September 11 date. The e-mail specifically mentioned that a "hygienist, contractor, and pool expert" would be appearing for the inspection. Plaintiffs' counsel objected to the proposed inspection, but offered September 25 as a possible alternative date. On or about September 18, 2020, Integon

---

[3]     Undesignated statutory references are to the Code of Civil Procedure.

served a second amended property inspection demand, rescheduling the inspection for September 25, 2020.

On September 25, 2020, Integon's counsel arrived at plaintiffs' property for the site inspection with a hygienist, contractor, and pool expert. Upon arrival, Integon's counsel learned for the first time that approximately two weeks prior to the inspection, plaintiffs removed nearly all the damaged kitchen flooring and replastered the pool.

On October 30, 2020, Integon filed a motion for sanctions based on plaintiffs' spoliation of evidence. Integon's motion sought issue sanctions, evidence sanctions, and monetary sanctions. Integon also requested an adverse inference instruction for the willful suppression of evidence. Plaintiffs opposed the motion.

After a hearing, the court found that plaintiffs intentionally spoliated critical evidence that they knew Integon planned to inspect. Thus, the trial court granted Integon's request for monetary sanctions in the amount of $8,440. The court also granted Integon's request for an adverse inference instruction (CACI No. 204). The court denied (without prejudice) Integon's request for evidence and issue sanctions.

Plaintiffs timely appealed the court's order. (§ 904.1, subd. (a)(12); Cal. Rules of Court, rule 8.104.)

DISCUSSION

I

*Monetary Sanctions*

Plaintiffs argue that the trial court erred in granting monetary sanctions. We disagree.

A.  *Background law*

Section 2023.030 of the Civil Discovery Act (§ 2016.010 et seq.) authorizes a trial court to impose sanctions "against anyone engaging in conduct that is a misuse of the discovery process." (§ 2023.030.) The statutes governing each particular discovery method identify what types of sanctions (monetary, issue, evidence, or terminating) are

5

available for a given discovery abuse. (*London v. Dri-Honing Corp.* (2004) 117 Cal.App.4th 999, 1005-1007.)

A trial court has broad discretion to impose sanctions, but the discovery statutes indicate that judges should generally take an incremental approach to imposing sanctions for discovery abuses, starting with monetary sanctions and ending with the ultimate sanction of termination. (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992.) If a lesser sanction fails, a greater sanction will be warranted until a sanction is reached that will curb the abuse. (*Doppes, supra*, at p. 992.) Monetary sanctions are the least severe and, accordingly, the most common form of sanction for misuse of discovery.

Section 2023.030, subdivision (a) delineates the trial court's authority to impose monetary sanctions, authorizing the court to impose a monetary sanction against anyone "engaging in the misuse of the discovery process." (§ 2023.030, subd. (a); *Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 73-74 (*Kwan*).)[4] It provides that when a monetary sanction is authorized, the trial court "*shall impose* that sanction *unless* it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2023.030, subd. (a), italics added.) Thus, a party found to be misusing the discovery process can avoid a monetary sanction only by proving that it acted with " 'substantial

---

[4] The full text of section 2023.030, subdivision (a) is as follows: "The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. The court may also impose this sanction on one unsuccessfully asserting that another has engaged in the misuse of the discovery process, or on any attorney who advised that assertion, or on both. If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2023.030, subd. (a).)

justification' " or that imposition of the sanction would be " 'unjust.' " (*California Shellfish, Inc. v. United Shellfish Co.* (1997) 56 Cal.App.4th 16, 25.)

In contrast, a trial court's power to impose nonmonetary sanctions is more limited. The general rule is that nonmonetary sanctions are authorized only if a party has failed to obey a prior court order compelling discovery. (*Moofly Productions, LLC v. Favila* (2020) 46 Cal.App.5th 1, 11; *New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1423 (*New Albertsons*).) But courts have recognized exceptions to this rule in certain circumstances, such as (1) repeated and willful refusals to permit discovery; (2) instances where a prior court order would have been futile; or (3) egregious misconduct. (See *New Albertsons, supra*, at pp. 1424-1426, 1428, 1431-1434 [listing cases]; *Reales Investment, LLC v. Johnson* (2020) 55 Cal.App.5th 463, 474; *Cottini v. Enloe Medical Center* (2014) 226 Cal.App.4th 401, 428; *Maldonado v. Superior Court* (2002) 94 Cal.App.4th 1390, 1399.)

B.      *Standard of review*

We review a trial court's sanctions order under the deferential abuse of discretion standard. (*Kwan, supra*, 58 Cal.App.5th at p. 73.) Under this standard, the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious. (*Ibid*.; *Park v. Law Offices of Tracey Buck-Walsh* (2021) 73 Cal.App.5th 179, 188.) We presume the trial court's order was correct and draw all reasonable inferences to uphold the trial court's decision. (*Creed-21 v. City of Wildomar* (2017) 18 Cal.App.5th 690, 702.)

C.      *Analysis*

Relying on *New Albertsons, supra*, 168 Cal.App.4th 1403, plaintiffs assert that sanctions can be imposed on a party only if that party (1) violated a prior discovery order;

or (2) engaged in egregious misconduct.[5] Plaintiffs argue that neither circumstance applies here, and therefore the trial court's order must be reversed. We disagree.

As discussed, section 2023.030 authorizes a court to impose sanctions for "misuse" of the discovery process "[t]o the extent authorized by" the particular discovery method. (§ 2023.030.) Section 2031.010 et seq., which governs the discovery method at issue in this case, describes the types of sanctions available when a party fails to comply with an inspection demand. (§ 2031.320.) It generally provides that the court shall impose a monetary sanction against any party who unsuccessfully makes or opposes a motion to compel compliance with a demand, unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. (§ 2031.320, subd. (b).) It also provides that an issue, evidence, or terminating sanction is authorized if the party "fails to obey an order compelling inspection," with a monetary sanction also authorized "[i]n lieu of or in addition to that sanction." (§ 2031.320, subd. (c).)

Plaintiffs construe this language to mean that an order to compel is a statutory prerequisite for any award of sanctions, even monetary sanctions. Not so. Plaintiffs conflate the requirements for nonmonetary sanctions with the requirements for less severe monetary sanctions. As the court in *New Albertsons* observed, the purpose of the "statutory requirement that there must be a failure to obey an order compelling discovery before the court may impose a nonmonetary sanction" is to provide "some assurance that such a potentially severe sanction will be reserved for those circumstances where the party's discovery obligation is clear and the failure to comply with that obligation is

---

**5** Plaintiffs also rely on cases in which sanctions were upheld under a court's inherent power to ensure the orderly administration of justice. However, because we are not aware of any cases imposing sanctions under a court's inherent power that did not also involve a finding of "egregious misconduct," we deem it unnecessary to address this argument separately.

8

clearly apparent." (*New Albertsons, supra*, 168 Cal.App.4th at p. 1423.) No such concerns are present where, as here, the court has imposed only monetary sanctions. Monetary sanctions are authorized in the context of almost all motion proceedings under the Civil Discovery Act. (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 294.)

Although monetary sanctions usually arise in the context of a motion to compel, we cannot agree that monetary sanctions may be imposed *only* where a party has filed a motion to compel. "[C]ommon sense dictates sanctions cannot be pursued before the affected party finds out about the alleged discovery [abuse]." (*Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1163.) Likewise, a motion to compel cannot be a prerequisite for monetary sanctions where the motion would be futile because the evidence has been destroyed. (*New Albertsons, supra*, 168 Cal.App.4th at p. 1426; *Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1546.) Accordingly, we join our colleagues in other courts in concluding that monetary sanctions are allowed whether or not the party has refused to obey a prior discovery order. (*Sherman, supra*, at pp. 1162-1164; *Tucker v. Pacific Bell Mobile Services* (2010) 186 Cal.App.4th 1548, 1561; see *London v. Dri-Honing Corp., supra*, 117 Cal.App.4th at p. 1007.) It follows that the trial court was not required to find plaintiffs violated a prior court order. The trial court was required to find plaintiffs engaged in misuse of the discovery process.[6]

There is substantial evidence to support the finding that plaintiffs misused the discovery process in this case. As our Supreme Court has held, "[d]estroying evidence in response to a discovery request after litigation has commenced would surely be a misuse

---

[6] This renders it unnecessary for us to consider plaintiffs' argument that the evidence was insufficient to support a finding of "egregious" misconduct. But, even if it were necessary for us to consider the argument, we would reject it. The timing and nature of plaintiffs' conduct would support a finding of egregiousness.

of discovery . . . , as would such destruction in anticipation of a discovery request." (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 12 (*Cedars-Sinai*); accord, *Kwan, supra*, 58 Cal.App.5th at p. 74 [spoliation of evidence is sanctionable discovery abuse].)  Here, plaintiffs intentionally destroyed relevant, physical evidence even though they knew there was a pending demand to inspect that very evidence.  The trial court properly concluded that this was an abuse of the discovery process.

Section 2023.030 provides that, if a monetary sanction is authorized, the court "shall" impose that sanction "unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2023.030, subd. (a).)  The phrase " 'substantial justification' " has been defined to mean a justification that is "clearly reasonable because it is well grounded in both law and fact." (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434-1435; *Kwan, supra*, 58 Cal.App.5th at p. 75.)  The burden of proving "substantial justification" or "unjust imposition" is on the party asserting the defense. (*Doe, supra*, at pp. 1435-1436; *Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1269.)

Plaintiffs contend the evidence shows they had substantial justification for their actions because (1) Integon had the opportunity and duty to inspect the damaged flooring and pool as part of the claims process; (2) Integon never told plaintiffs that the flooring and pool must be maintained in their damaged condition, and told plaintiffs to replace the flooring to mitigate damages; (3) plaintiffs replaced the flooring to eliminate the tripping/mold hazard in their home; and (4) defendants were not prejudiced by plaintiffs' actions.  Like the trial court, we are unpersuaded.

Plaintiffs had an obligation to preserve the evidence because it was the subject of a pending discovery request.  That obligation exists independent of any obligation that Integon may have had to investigate plaintiffs' claims during the claim handling process.  Thus, even if we assume Integon breached its claim handling responsibilities, this in no

10

way relieved plaintiffs of their own affirmative duty to preserve evidence responsive to the discovery request.[7]

The trial court rejected plaintiffs' assertion that they were unaware they needed to preserve the evidence, calling it "disingenuous." We are bound by the trial court's credibility determination, which was supported by substantial evidence. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) Although there was no formal request to preserve the evidence, plaintiffs were on notice that Integon intended to inspect their property to investigate plaintiffs' claims. Plaintiffs also knew that the inspection would include the water-damaged flooring and pool since their lawsuit was based, in part, on Integon's alleged failure to investigate and pay for mold and smoke damage to the flooring and pool. In addition, the inspection notice specifically identified the pool and interior surfaces related to mold as areas to be inspected, and written communications between counsel confirmed that Integon planned to have a hygienist, contractor, and pool expert present for the inspection. Plaintiffs nevertheless decided to remove nearly all of the wood flooring and completely replaster the pool approximately two weeks before the date of the inspection, and to do so without any prior notice to defendants. This was a misuse of the discovery process. (*Cedars-Sinai, supra*, 18 Cal.4th at p. 12; *Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1224.)

Plaintiffs argue there is no evidence to support a finding that they removed the damaged flooring for any reason other than to prevent a dangerous condition in the home. Not so. The timing of their actions supports the trial court's finding that plaintiffs knowingly and willfully destroyed the evidence to avoid the inspection. We cannot

---

[7] Our decision is necessarily limited to the facts presented by this case. (*Benitez v. North Coast Women's Care Medical Group, Inc*. (2003) 106 Cal.App.4th 978, 991-992.) We need not and do not decide whether plaintiffs had an obligation to preserve the evidence prior to defendants' discovery request.

11

ignore that plaintiffs lived with the "dangerous" wood flooring for nearly two years before finally removing it, without notice, on nearly the eve of the inspection. Plaintiffs argue the repairs were delayed until they "saved enough money," but this is betrayed by the record. Plaintiffs did not pay anyone to remove the flooring; they did the work themselves and the damaged flooring was merely removed, not replaced. The record also shows that plaintiffs paid to replace their HVAC system months *before* they removed the allegedly "dangerous" flooring. Thus, lack of savings does not explain the timing of plaintiffs' actions.

Moreover, plaintiffs failed to provide any justification for replastering the pool, or for failing to notify defendants that the flooring was about to be removed. Accordingly, the trial court did not abuse its discretion in rejecting the "danger" justification.

Plaintiffs' prejudice argument fares no better. Integon presented substantial evidence demonstrating the prejudice it would suffer from the destruction of the evidence. Integon's expert hygienist, Peter Kaminski, declared that because the wood flooring was removed prior to his inspection, he was unable to assess the pattern of damage to the wood flooring, which limited his ability to render an opinion on the cause of the mold. Integon's pool expert, Stan Johnson, declared that plaintiffs' replastering of the pool prevented him from assessing whether the damage to the pool was caused by the fire and whether the pool needed to be replastered because of the fire. The mere fact that Integon previously had inspected the property as part of its initial claim review—before plaintiffs sought additional payment for mold remediation and replastering the pool— failed to prove there was no prejudice to defendants.

We are similarly unpersuaded by plaintiffs' contention that public policy considerations render any award of sanctions unjust. The public policy considerations advanced by plaintiffs are essentially the same arguments plaintiffs relied on for their "substantial justification" defense. None of the public policies discussed justify the

12

intentional spoliation of relevant evidence that is the subject of a pending discovery request.

There was nothing arbitrary or capricious about the trial court's decision to award monetary sanctions. Plaintiffs have failed to show an abuse of discretion.

II

*Adverse Inference Instruction*

In addition to challenging the monetary sanction, plaintiffs challenge the trial court's approval of the use of an adverse inference instruction on the willful suppression of evidence. We again find no abuse of discretion.

It is established law that where there is evidence of willful suppression of evidence, the trial court may give the jury an adverse inference instruction under Evidence Code section 413. (*Cedars-Sinai, supra*, 18 Cal.4th at pp. 11-12.) Evidence Code section 413 provides that "[i]n determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider . . . the party's . . . willful suppression of evidence relating thereto . . . ." (Evid. Code, § 413.) The standard jury instruction for willful suppression of evidence is CACI No. 204. It provides: "You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party." (CACI No. 204.)

Here, the trial court found that plaintiffs engaged in a willful destruction of evidence and therefore granted defendants' request for the standard CACI No. 204 instruction. As discussed, there was sufficient evidence to support a finding of willful destruction of evidence. Accordingly, the trial court did not abuse its discretion by approving the use of the standard adverse inference instruction.

13

## DISPOSITION

The trial court's order is affirmed.  Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)  & (2).)


                                                                                          _____KRAUSE_____, J.

We concur:


_____HOCH_____, Acting P. J.


_____RENNER_____, J.

14