Filed 7/1/22  Chtivelman v. Northridge Caregivers Co. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MICHAEL CHTIVELMAN, Plaintiff and Appellant, v. NORTHRIDGE CAREGIVERS CO., INC., et al., Defendants and Respondents; GLEN BROEMER, Appellant. | B317411 (Los Angeles County Super. Ct. No. LC107566) |

APPEALS from an order of the Superior Court of Los Angeles County, David A. Rosen, Judge.  Affirmed.

Glen Broemer, in pro. per., and for Plaintiff and Appellant Michael Chtivelman.

RHM Law, Matthew D. Resnik and David M. Kritzer for Defendants and Respondents Northridge Caregivers Co., Inc., and Larissa Li.

Plaintiff and appellant Michael Chtivelman and his attorney, appellant Glen Broemer,[1] challenge the trial court's order awarding defendants and respondents Northridge Caregivers Co., Inc. (NCCI) and Larissa Li $5,250 in discovery sanctions. Appellants contend that the court made several errors of law that require reversal and, in any case, abused its discretion in denying plaintiff and plaintiff's counsel's motion for sanctions and granting sanctions in favor of defendants. We affirm.

## FACTS AND PROCEEDINGS BELOW

NCCI is a marijuana dispensary that has operated at various locations in the San Fernando Valley. Chtivelman and his co-plaintiff Pavel Lyubovny[2] had been involved with NCCI in some capacity[3] for several years when, in early 2015, they claim

---

[1] In January 2022, Broemer filed a declaration in the trial court stating that he was "unable to continue as . . . Chtivelman's attorney" and was "filing a substitution of attorney in this case and in the related case substituting out as attorney of record." In his opening brief on appeal, which was filed in March, Broemer states that the appeal is on behalf of "Chtivelman and his attorney . . . Broemer." We therefore assume that Broemer continues to represent Chtivelman.

[2] Lyubovny is not a party to this appeal.

[3] The operative complaint alleges that Chtivelman and Lyubovny "controlled and operat[ed]" NCCI as a "cooperative corporation" "for several years, with the consent of members of the cooperative." The complaint makes conflicting claims as to when the two surrendered ownership of this cooperative. According to one portion of the complaint, they "were incarcerated in 2011 or 2012 and at that time gave Yevgeny

2

they made an oral agreement with Li and defendant Michael Smushkevich[4] to renovate a new storefront for NCCI. Chtivelman and Lyubovny claim that they spent approximately $1 million building out a new location for NCCI in Van Nuys, but in August 2015, city officials shut down the facility for operating in violation of state law. In November 2015, NCCI gave them promissory notes for $500,000 each, which NCCI thereafter refused to repay.[5]

Defendants NCCI and Li tell a different story. They claim that Lyubovny was the chief executive officer of NCCI until he was convicted of Medicare fraud in 2009, at which point he resigned and transferred his ownership interest to another

---

Kucher legal title to the corporation, along with the responsibility of tending to its day to day affairs, with the understanding that at some point in the future [p]laintiffs would resume operating the corporation." At another point in the same complaint, they allege that "[i]n or about October 2014, [they] agreed to transfer their legal interest in [NCCI] to Kucher" but "continued to participate as members in the operation and management" of NCCI.

[4] Plaintiffs allege that Smushkevich was a part owner and manager of NCCI. He is a defendant in the case but is not a party to this appeal.

[5] In the operative complaint, plaintiffs give conflicting explanations of why NCCI issued the promissory notes. At one point in the complaint, they claim that plaintiffs agreed to lend NCCI money in November 2015. At another point, they claim that the promissory notes were "in response to [p]laintiffs' contributions to the corporation, including but not limited to the buildout" at the Van Nuys location, which had already been completed by November 2015.

man, Yevgeny Kucher. According to defendants, Chtivelman and Lyubovny threatened to harm Kucher and his family if he did not give them 50 percent of NCCI's profits. Kucher transferred the ownership of NCCI to Li in 2015. Chtivelman and Lyubovny then made similar demands of Li, threatening to kidnap her children and physically injure her if she did not comply. Li claims she signed the promissory notes in response to these threats. According to defendants, plaintiffs continued to threaten and harass Li, demanding that she give them 50 percent of NCCI's profits.

In May 2018, Li and NCCI filed suit against plaintiffs. The operative first amended complaint included causes of action for assault and extortion. Shortly thereafter, in July 2018, Chtivelman and Lyubovny filed a complaint of their own against Li and NCCI. Neither original complaint is included in the record on appeal, but the parties agree that Chtivelman and Lyubovny originally demanded only repayment of the promissory notes. In the operative third amended complaint, plaintiffs also seek to recover their ownership stake in NCCI.

The discovery dispute at issue in this appeal began with a request for the production of documents Chtivelman served on Li in August 2020. Li served a response on October 2, 2020, followed by an amended response on November 2, 2020, and a second amended response on December 4, 2020. According to defendants, on January 15, 2021, Chtivelman filed a motion to compel further responses to six of the requests for production, and Li produced additional responses on March 23, 2021, but neither the motion nor Li's responses is included in the record on appeal, nor is any ruling from the trial court on the motion. In a later ruling, the trial court mentioned an April 2021 motion

4

to compel,[6] but this motion too is absent from the record on appeal. According to defendants, the court awarded plaintiffs $1,260 in sanctions in response to a motion to compel, but the trial court's order is also absent from the record.

In August 2021, the litigation took a dramatic turn, when Lyubovny defected from Chtivelman's side in the case. He decided to proceed in propria persona, ending his representation by Broemer, who continued to represent Chtivelman.[7] Lyubovny sent a statement to all the parties in the case and NCCI's attorney, David Kritzer, alleging that many of the allegations in the complaint were "fabrications and false statements," and declaring his willingness to serve as a witness for the defendants if the litigation continued. Lyubovny stated that Broemer urged him and Chtivelman to make false allegations, including the claims that they had an ownership right in NCCI, and that they had provided funding or a loan for NCCI's operations. Lyubovny's statement also described Broemer's strategy to

---

[6] It is not clear if this motion is different from the January 15 motion defendants have referred to, or if it is the same motion, with a January filing date and a hearing in April.

[7] Defendants filed a motion in this court to strike from appellants' briefs and from the record all references to Lyubovny's change of heart, as well as to the subsequent motion to disqualify defendants' attorneys from continuing to represent them on the ground that they are " 'irrelevant, false, or improper matters' not germane to the instant appeal." The motion is denied. The motion for sanctions at issue in this appeal was based in part on the alleged misconduct of defendants' attorney with regard to Lyubovny, and it is impossible to understand the trial court's ruling without reference to the disqualification motion and the facts surrounding it.

5

"use massive discovery . . . to create . . . chaos and mess in the operation of NCCI" to force Li and her codefendant Smushkevich to give Lyubovny and Chtivelman an ownership stake in NCCI.

On October 1, 2021, Chtivelman filed a motion for sanctions against defendants. He alleged that defendants' attorney hampered his efforts to obtain discovery by refusing to turn over documents to which he was entitled. He also alleged that Li lied in many of her responses to Chtivelman's discovery requests. Finally, he alleged that Kritzer, NCCI's attorney, violated attorney-client privilege by obtaining statements from Lyubovny, who had previously been represented by Broemer, the same attorney who represented Chtivelman. Defendants filed an opposition, which included a declaration from Lyubovny, in which they asked the court to award them sanctions against Chtivelman and Broemer. One month after filing the motion for sanctions, Chtivelman filed a motion to disqualify Kritzer and his law firm from continuing to represent NCCI on the bases that he had obtained and used documents in violation of attorney-client privilege.

The trial court ruled in favor of defendants, denying Chtivelman's motion for sanctions, and instead ordered Chtivelman and Broemer to pay $5,250 in sanctions to defendants. The court stated that Chtivelman had failed to make a persuasive case for sanctions, had failed to make the motion in a timely manner, and had failed to meet and confer or move to compel production of the alleged inadequate discovery. The court also rejected Chtivelman's argument that he was entitled to sanctions because of Broemer's violations of attorney-client privilege, stating that they were more properly asserted in Chtivelman's motion to disqualify defendants' counsel, which the

6

trial court denied on the same day. The court awarded sanctions in favor of defendants on the ground that Chtivelman "presented confusing, unintelligible, and unpersuasive arguments as to why sanctions are appropriate."

## DISCUSSION

### A. *Legal Principles*

"Code of Civil Procedure section 2023.030 permits the trial court to impose . . . sanctions against anyone who has engaged in a misuse of the discovery process . . . . Code of Civil Procedure section 2023.010 provides that the following, among others, are misuses of the discovery process: failing to respond or to submit to an authorized method of discovery; making, without substantial justification, an unmeritorious objection to discovery; making an evasive response to discovery; and disobeying a court order to provide discovery. Other sanctionable discovery abuses include providing false discovery responses and spoliation of evidence." (*Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 191 (*Howell*), disapproved on another ground by *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 516.) Section 2023.030, subdivision (a) makes sanctions reciprocal, in that the court may "impose [a monetary] sanction on one *unsuccessfully* asserting that another has engaged in the misuse of the discovery process." (Italics added.) Indeed, "[a] court *must* impose a monetary sanction" against the losing party unless an exception applies. (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1423 (*New Albertsons*), italics added.)

"Under this statutory scheme, the trial court has broad discretion in selecting the appropriate sanction, and we must

7

uphold the trial court's determination absent an abuse of discretion."  (*Howell*, *supra*, 18 Cal.App.5th at p. 191.)

### B.  *Application to this Case*

Appellants contend that the trial court applied incorrect legal standards in denying their motion for sanctions, and abused its discretion by describing the motion as "confusing, unintelligible, and unpersuasive."  We agree with appellants that the trial court misstated the law in certain regards, but we nevertheless affirm the court's decision because appellants have failed to show, either before the trial court or here, that their motion has merit.  Appellants argue that, even if the trial court did not abuse its discretion by denying their motion, the court should not have awarded sanctions in favor of respondents. We disagree.  Contrary to appellants' claim, the case did not involve novel issues that would support declining to award sanctions in favor of respondents.

#### 1.  Chtivelman's Motion for Discovery Sanctions

In its ruling denying Chtivelman's motion for sanctions, the trial court faulted Chtivelman for failing "to timely move to compel further responses under the proper statutory [C]ode of [C]ivil [P]rocedure."  Chtivelman correctly notes that, although a party must file a motion to compel a further response to a demand for production of documents within 45 days of the opponent's response (see Code Civ. Proc., § 2031.310, subd. (c)), there is no similar deadline for a motion for sanctions. (*London v. Dri-Honing Corp.* (2004) 117 Cal.App.4th 999, 1008–1009 (*London*).)

When explaining its decision to award sanctions to defendants, the trial court noted that Chtivelman "did not meet and confer" before filing the motion for sanctions. Chtivelman is correct that there is no requirement to meet and confer before filing a motion for discovery sanctions. (*Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 411 (*Sinaiko*).)

Despite these apparent errors in the trial court's description of the law, however, it does not necessarily follow that we must reverse the court's order. The trial court did not deny Chtivelman's motion for sanctions primarily because of a failure to meet and confer or to timely move to compel further responses. Instead, the court denied the motion because, according to the court, it "includes a grab bag of conduct that [Chtivelman] alleges is sanctionable. The vast majority of [Chtivelman]'s arguments are borderline incomprehensible, confusing, and difficult to decipher with respect to [Chtivelman]'s allegations as to the sanctionable conduct. [Chtivelman] also refers to motions to quash, and motions for protective orders which are not the subject of the instant motion. Ultimately, the [c]ourt does not find moving party's arguments persuasive."

Appellants take exception to the trial court's characterization of the motion, but we have reviewed appellants' record, and do not find the trial court's description inaccurate. Indeed, it applies equally well to appellants' briefs in this appeal. At no point in their briefs do appellants provide a cogent explanation of the litigation, nor a full description of respondents' conduct and why it is sanctionable. Instead, appellants merely provide a laundry list of complaints about respondents, with citations to appellants' own motions and declarations before the

9

trial court.  When we turn to the cited documents, we find them repeating the same complaints about respondents that they make now.  To understand what was actually going on, we must then search through the record for the underlying documents and attempt to piece together the nature of the dispute.  We agree with the trial court, which found Chtivelman's "arguments and references to these hundreds of documents unnecessarily burdensome, confusing, and unpersuasive."  Providing an adequate record and proper citations to the record is appellants' burden, not the court's.

The trial court also denied Chtivelman's motion for sanctions in part because it was untimely.  The court stated, "[I]t appears moving party either never moved to compel, or never moved to compel further, and is attempting to move for sanctions as to discovery responses moving party believes were inadequate. But it is too late to do so."  Although there is no requirement to bring a motion for sanctions at the same time as a motion to compel, "timeliness is still important" (*London*, *supra*, 117 Cal.App.4th at p. 1008), and the trial court has "considerable discretion in defining a request for sanctions as untimely."  (*Id*. at p. 1009.)

The court did not abuse its discretion in finding that appellants' sanction request was dilatory.  As an example, we will examine Chtivelman's allegation that Li made inconsistent statements in her responses to discovery requests.  In at least one instance, Chtivelman appears to be correct.  Appellants asked Li to "[s]tate all facts that support your allegation that, at or near the time [Chtivelman] and Lyubovny came to the dispensary to provide marketing and advertising advice, [Chtivelman] and Lyubovny removed equipment, copy machines, printers and

cannabis from the dispensary without your permission or prior knowledge." (Capitalization omitted.) In October 2020, Li responded that she had no personal knowledge of the issue. One month later, she amended her response to state that Chtivelman and Lyubovny "have confirmed to . . . Smushkevich and others that they stole equipment . . . [f]rom the NCCI facility." (Boldface omitted.) Finally, in her next amended response in December 2020, Li stated that "[t]he theft was witnessed by me."

But even if we assume Li's conduct was sanctionable, there was no justification for waiting eight months, until August 2021, to seek sanctions. Indeed, there appears to have been extensive litigation regarding the discovery responses months earlier. According to defendants, Chtivelman filed a motion to compel further responses to certain documents on January 15, 2021, and Li provided additional responses on March 23. The trial court stated that plaintiffs filed a motion to compel in April 2021, and according to defendants, the court awarded plaintiffs $1,260 in sanctions. Appellants do not deny that any of these proceedings took place, and during oral argument, Broemer appeared to confirm that he received some amount of sanctions from Kritzer in 2021. Yet we cannot find the relevant documents in the record.[8] Thus, we do not know if appellants' allegations regarding Li's inconsistent statements were litigated at the earlier time, nor whether they were the basis for the previous

---

[8] The only document we have found pertaining to any of these motions is a copy of defendants' opposition to plaintiffs' motion to compel and for sanctions, which is included as an exhibit to another document. We can find neither the motion to compel nor the trial court's ruling in the record.

11

award of sanctions in favor of appellants. In any case, the motion for sanctions for this conduct was either late or duplicative.

Other allegations by appellants pertain to more recent events, but an examination of the record shows they ultimately involved a dispute over the earlier discovery responses. For example, in email conversations in June 2021, Kritzer and Broemer argued over whether Chtivelman and Lyubovny were entitled to obtain documents from defendants. Broemer raised new theories, and Kritzer made objections. Appellants allege that some of Kritzer's responses represented sanctionable discovery abuse. But the record shows that the documents at issue were the same ones Broemer had demanded in his 2020 discovery requests. Once again, with no access to the record of previous litigation over these discovery claims, we cannot determine the extent to which the new claims were duplicative of previous disputes.

"It is the appellant's burden to demonstrate the existence of *reversible* error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766, italics added.) This includes the burden "to provide an adequate record to permit review of a claimed error." (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1385.) Because appellants have failed to provide a record sufficient to allow us to evaluate their allegations, we must resolve the uncertainty against them and presume that their claims are duplicative of those raised in earlier proceedings. (See *In re Raymundo B.* (1988) 203 Cal.App.3d 1447, 1452.)

Although the trial court's decision included misstatements of law in certain regards, the court did not abuse its discretion

by denying the motion on the grounds that Chtivelman failed to meet his burden of proof and delayed in filing the motion.

### 2.    Chtivelman's Demand for Sanctions for Violation of Attorney-Client Privilege

In addition to seeking sanctions for discovery violations, appellants also asked the trial court to impose monetary sanctions on Kritzer for violating attorney client privilege by reading and publishing Lyubovny's statements regarding Broemer's conduct in the lawsuit.[9]   The trial court refused to do so, stating that "[a]rguments by moving party as to violations of the attorney-client privilege, disqualification, and sealing documents are not well taken here as these arguments were asserted in moving party's motion to disqualify."  Chtivelman argues that the remedies are not mutually exclusive—he could seek to disqualify opposing counsel and, in a separate motion, seek sanctions for violations of attorney-client privilege.

Even assuming that appellant is correct that a party may seek both sanctions and disqualification based on the same conduct, the court's ruling was not inconsistent with this premise.  Because the court rejected disqualification on the merits, it was entitled to reject sanctions based on the same merits.  The court reasoned that many of Lyubovny's statements to which appellants objected "do not appear to be

---

[9] Lyubovny apparently wanted his allegations against Broemer to be aired publicly, but Broemer represented both Chtivelman and Lyubovny.  "[I]n general, one joint client cannot waive the attorney-client privilege for another joint client." (*Anten v. Superior Court* (2015) 233 Cal.App.4th 1254, 1256.)

13

subject to the attorney-client privilege at all." Other statements by Lyubovny may have fit within attorney-client privilege, but the court noted that Kritzer reasonably believed these statements were subject to the crime-fraud exception.[10] Indeed, appellants make no reasoned argument now against the correctness of the trial court's reasoning on the disqualification.

### 3. The Trial Court's Award of Sanctions to Respondents

Finally, appellants contend that the trial court erred by ordering them to pay sanctions to respondents. "A court *must* impose a monetary sanction against a party, person, or attorney who unsuccessfully makes or opposes a discovery motion, unless the court finds that the person subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (*New Albertsons, supra,* 168 Cal.App.4th at p. 1423, italics added; accord, Code Civ. Proc., § 2023.030, subd. (a).) Appellants argue that they had substantial justification for bringing their discovery motion because the case involved an " 'unsettled' area of law." (*Yelp Inc. v. Superior Court* (2017) 17 Cal.App.5th 1, 21.)

Appellants' position appears to be based on the assumption that, in order to affirm the trial court, we would need to disagree with longstanding precedent in *London, supra,* 117 Cal.App.4th 999 and *Sinaiko, supra,* 148 Cal.App.4th 390 holding that a party need not meet and confer or meet a 45-day deadline in

---

[10] These statements included Lyubovny's allegations that Broemer fabricated many of the claims in the complaint, and that he claimed reimbursement for $400 per hour in attorney fees despite billing his clients at a rate of only $100 per hour.

order to file a motion for sanctions.  That is not the case, and we see no novel or unsettled issues here that would justify denying sanctions in favor of respondents.

## DISPOSITION

The trial court's order is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:



BENDIX, J.



MORI, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15