# IN THE SUPREME COURT OF CALIFORNIA

CITY OF LOS ANGELES,
Plaintiff and Appellant,

v.

PRICEWATERHOUSECOOPERS, LLP,
Defendant and Respondent.

S277211

Second Appellate District, Division Five
B310118

Los Angeles County Superior Court
BC574690

August 22, 2024

Justice Kruger authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Jenkins, Evans, and Snauffer[*] concurred.

---

[*] Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CITY OF LOS ANGELES v.
PRICEWATERHOUSECOOPERS, LLP

S277211


Opinion of the Court by Kruger, J.


The City of Los Angeles filed a lawsuit against a private contractor. The contractor sought discovery relevant to the claims and defenses. After years of stonewalling, the City eventually turned over information revealing serious misconduct in the initiation and prosecution of the lawsuit. The trial court found that the City had been engaging in an egregious pattern of discovery abuse as part of a campaign to cover up this misconduct. The court ordered the City to pay $2.5 million in discovery sanctions.

The central question before us is whether the trial court had the authority to issue the order under the general provisions of the Civil Discovery Act concerning discovery sanctions, Code of Civil Procedure sections 2023.010 and 2023.030. The Court of Appeal in this case answered no. Bucking the long-prevailing understanding of these provisions, the appellate court read the Civil Discovery Act as conferring authority to sanction the misuse of certain discovery methods, such as depositions or interrogatories, but as conferring no general authority to sanction other kinds of discovery misconduct, including the pattern of discovery abuse at issue here.

We now conclude the prevailing understanding of the Civil Discovery Act was, in fact, correct: Under the general sanctions provisions of the Civil Discovery Act, Code of Civil Procedure

1

sections 2023.010 and 2023.030, the trial court had the authority to impose monetary sanctions for the City's pattern of discovery abuse. The court was not limited to imposing sanctions for each individual violation of the rules governing depositions or other methods of discovery. We reverse the Court of Appeal's judgment to the contrary.

## I.
## A.

In 2010, the City of Los Angeles contracted with PricewaterhouseCoopers (PwC) to modernize the billing system for the City's Department of Water and Power (LADWP). The rollout of the new billing system did not go smoothly. When the system went live in 2013, it sent inaccurate or delayed bills to a significant portion of the City's population.

In March 2015, following the botched rollout, the City filed suit against PwC. In a complaint filed by the City's attorneys and special counsel Paul Paradis, Gina Tufaro, and Paul Kiesel, the City alleged that PwC had fraudulently misrepresented its qualifications to undertake the LADWP billing modernization project. Then, about a month later, in April 2015, attorney Jack Landskroner, representing Los Angeles resident Antwon Jones, filed a putative class action against the City on behalf of overbilled LADWP customers (*Jones v. City of Los Angeles*). The two lawsuits were assigned to the same trial judge. (*City of Los Angeles v. PricewaterhouseCoopers, LLC* (2022) 84 Cal.App.5th 466, 477 (*City of L.A.*).)

Instead of filing an answer to the *Jones v. City of Los Angeles* complaint, the City quickly entered into negotiations with Landskroner. On August 7, 2015, the parties arrived at a preliminary settlement agreement, which provided that the City

2

would reimburse 1.6 million LADWP customers the full amount by which they were overcharged; that it would implement "remedial and corrective measures" that the City valued at approximately $20 million; and that it would award up to $19 million in attorney's fees to plaintiffs' counsel. In the end, the settlement resulted in a payment of $10.3 million in attorney's fees to Landskroner. The City publicly announced its intent to recover the full cost of the *Jones v. City of Los Angeles* settlement in its lawsuit against PwC.

Meanwhile, over the next five years, pretrial discovery in the PwC case would gradually reveal a more substantial connection between the two lawsuits: Counsel for the City had been behind the *Jones v. City of Los Angeles* lawsuit, and they had sought to engineer the litigation so that the City could definitively settle all of the claims brought by overbilled customers while passing the costs of the settlement in a suit against PwC.

This story, which would ultimately result in federal criminal charges for some of the actors involved, was not immediately — or willingly — revealed. At the outset of the litigation, PwC served discovery requests for production relating to the merits of the City's claims. In January 2017, the City served a privilege log to PwC with over 19,000 entries, almost all of which were described in identical terms: as "concerning investigation performed at the direction of counsel to assist in analyzing and preparing advice concerning attorney-directed remediation and LADWP's legal rights and remedies." The vast majority of these documents did not, however, appear to be communications to or from a lawyer. More than 17,000 documents were marked as attorney work product but appeared to have no attorney involvement, and more than 1,100

3

documents were marked as protected by attorney-client privilege but did not show an attorney as the sender or recipient. Despite the fact that the City was the plaintiff in this action and the defendant in the suit brought by Jones, one of the documents that the City had labeled as attorney work product was titled "Jones v. PwC – Initial Complaint – FINAL.DOC," with a date of January 24, 2015. No author was listed.

PwC responded by filing a motion to compel production of documents improperly withheld as privileged. It sought production of the more than 18,000 documents that had been withheld on grounds of attorney work product or attorney-client privilege despite having no apparent attorney involvement. The court ordered production of the documents withheld based on attorney work product and denied the motion as to the documents withheld on the basis of attorney-client privilege, but it also ordered the City to produce a refined privilege log with descriptions that would allow the court to determine whether the documents were in fact privileged. In response, the City produced an updated privilege log with 1,547 entries, including the draft *Jones v. PwC* complaint listed on the previous privilege log. The City described the complaint as "Document created by counsel containing legal advice and work product concerning the claims asserted in this action."

In May 2017, PwC served another set of requests for production seeking all communications between the LADWP and Jones's counsel before August 7, 2015. In response, the City claimed that the LADWP had not sent any documents to Jones's counsel before the day of the settlement agreement. It also asserted that the only responsive document to the requests for production was the comprehensive settlement demand from Jones, which it claimed was protected by a

"settlement/mediation" privilege. After counsel for PwC observed that the settlement demand did not appear on any privilege log, the City produced a revised privilege log in September 2017, where it continued to list the draft *Jones v. PwC* complaint as privileged.

PwC filed another motion to compel production. In response, the City claimed for the first time that the draft *Jones v. PwC* complaint was protected by the attorney-client privilege as well as attorney work product protection. At a hearing on the motion to compel in December 2017, Paradis stated that he drafted the complaint, and the court asked him why he drafted "a complaint for a plaintiff that's not the City." Paradis claimed that the complaint was "drafted . . . for the City" as part of an effort to explore "different legal strategies, different legal theories." When the court asked Paradis how Antwon Jones's name ended up on the complaint, Paradis stated that Jones's name had been chosen out of the group of people who had been complaining to the department. Paradis averred that the draft complaint had never been provided to anyone other than the City.

The court reserved decision on the motion to compel, but in January 2018 it issued an order instructing the City to produce the person most qualified (PMQ) to testify about the creation of the *Jones v. PwC* draft complaint. The City, however, did not produce a PMQ witness until after PwC filed a motion for compliance with the court's order. Eventually, in September 2018 — more than eight months after the court had originally issued its order on the PMQ deposition — the City produced then-Chief Assistant City Attorney Thomas Peters, with Paradis acting as his attorney. Peters, however, produced none of the documents called for by PwC's deposition notice, despite

the fact that the City had not objected to the requests listed in the notice.  He also admitted that he did not prepare for the deposition and did not do any investigation into whether the City had any documents responsive to the deposition notice. Peters also claimed that he had directed Paradis to draft the *Jones v. PwC* complaint as a "thought experiment," and he represented that he did not know who Jones's counsel was at the time the draft complaint was prepared.  When PwC asked about the City's knowledge of a preexisting relationship between Paradis and Landskroner — the lawyer who had represented Jones in the *Jones v. City of Los Angeles* matter — Paradis ended the deposition.  Several weeks later, the City filed a motion for a protective order with respect to the PMQ deposition, and PwC responded by filing a motion to compel the PMQ deposition and for monetary sanctions.

The court held a hearing on PwC's motion on December 5, 2018, and a hearing on the City's motion for a protective order on December 12, 2018.  In the first hearing, special counsel Paul Kiesel repeated the claim that the City Attorney's Office had instructed counsel to prepare the *Jones v. PwC* complaint.  But upon further questioning by the court, Kiesel eventually admitted that members of the City's special counsel had been retained by Jones.  He stated that the special counsel's relationship with Jones was not adverse to the City until Jones decided he wanted to pursue an action against the City, at which point the relationship with Jones ended.  After the hearing, the City filed multiple requests for extensions of time and a never-before-raised "common interest privilege" objection to the deposition notice, but the court ultimately granted PwC's motion to compel the City's continued PMQ deposition, ordered

PwC to depose Jones and Landskroner, and ordered the City to produce all documents called for in the PMQ deposition notice.

The City finally produced a copy of the caption and signature pages of the draft *Jones v. PwC* complaint, which listed the City's special counsel — Paradis, Kiesel, and Tufaro — as counsel for Antwon Jones. The City, however, continued to refuse to provide responsive documents to the other requests for production in the PMQ deposition notice. Meanwhile, PwC's deposition of Jones revealed that, contrary to Kiesel's representations, Jones had intended to file a suit against the City from the beginning. The deposition also revealed that Paradis never disclosed to Jones that he had been retained as special counsel to the City, and Jones had believed that Paradis and Landskroner were acting as cocounsel on his behalf throughout the class action.

On February 26, 2019, PwC continued its PMQ deposition with Chief Deputy City Attorney James Clark, who had been substituted for Peters as the person most qualified to testify about the *Jones v. PwC* draft complaint. Peters, meanwhile, defended the deposition as counsel to the City. Although Clark had prepared for the deposition and interviewed other attorneys, he threw away his notes from those interviews, saying, "I didn't need them. I use it as a method to remember things."

Clark's testimony nonetheless revealed the City Attorney's Office's involvement in a scheme by special counsel to collude with plaintiffs' counsel. During the deposition, Clark admitted that he and other members of the City Attorney's Office had been aware of Paradis's attorney-client relationship with Jones before the *Jones v. City of Los Angeles* complaint was

filed. During questioning, Clark also initially admitted that Paradis had drafted the *Jones v. PwC* complaint and given it to Landskroner, that Paradis had recruited Landskroner to sue the City on Jones's behalf because he would settle the case on terms more favorable to the City, and that Clark had known all along that Landskroner would initiate a favorable settlement negotiation with the City. Clark also testified that he had personally reviewed the draft *Jones v. PwC* complaint, and that the President of the LADWP Board of Commissioners and multiple in-house attorneys were involved in the ultimate decision not to bring the *Jones v. PwC* action. Later on in the deposition, however, Clark attempted to backtrack on several of these statements, stating that he had a "memory lapse" and did not "have reason to believe Mr. Paradis had any role in the actual drafting [of] the Complaint."

At a March 2019 hearing on the remaining privilege issues in the lawsuit, the court asked Landskroner about the attorney's fees that he had recovered in the *Jones v. City of Los Angeles* settlement, but Landskroner invoked his Fifth Amendment right against self-incrimination. During the same hearing, the City waived its claims of privilege over the draft *Jones v. PwC* complaint, but it did not waive its claims of privilege with respect to all communications regarding the class action. Several days later, Paradis, Tufaro, and Kiesel withdrew as special counsel for the City, and shortly thereafter, Peters turned over the full draft *Jones v. PwC* complaint to PwC counsel.

After the draft *Jones v. PwC* complaint was produced, the City and PwC continued to engage in protracted discovery disputes over the extent of the City's knowledge and involvement in the collusive litigation scheme. In April 2019,

the City produced a file titled "Emails Responsive to PMQ (1).pst," which contained 131 files that Kiesel had given to Peters in advance of the February 26 PMQ deposition. The file metadata revealed that Peters had downloaded the file to his hard drive before the deposition occurred but had failed to disclose these documents to PwC.

Several weeks after Clark's deposition, the City provided an errata sheet that attempted to qualify several of his most significant admissions. These recantations prompted a flurry of additional depositions and document requests. PwC took 18 additional fact witness depositions, and it filed a motion to compel documents and answers to deposition questions that the City had previously withheld on the basis of mediation privilege. The City opposed the motion and claimed, inter alia, that it was not aware of special counsel's actions in the collusive litigation scheme. PwC further filed a motion to compel documents related to special counsel's simultaneous representation of Jones and the City. The City also objected to this motion on the basis of attorney-client privilege, and it argued that the crime-fraud exception did not apply because Paradis and Kiesel acted alone.

The trial court granted both of PwC's motions to compel production. It found that the purported mediation was not legitimate and that PwC had established a prima facie case of fraud in which the City was complicit. Additionally, with respect to the second motion to compel, it concluded that any attorney-client privilege had been waived because an attorney could not simultaneously represent two clients who are adverse to each other in related litigation without destroying the duties of confidentiality and undivided loyalty and trust owed to both clients. The City filed a petition for writ of mandate to appeal

the court's determination that the attorney-client privilege did not apply. But before the Court of Appeal could review the writ petition, the City voluntarily dismissed with prejudice its case against PwC. As a result of the dismissal, the City did not complete its production of documents responsive to PwC's discovery requests.

After the dismissal, federal prosecutors announced that Paul Paradis, Thomas Peters, and two other City officials had pleaded guilty to criminal charges. Paradis and Peters admitted that the City had pursued a collusive litigation strategy wherein Paradis and Kiesel would represent both Jones and the City in parallel lawsuits against PwC. The City later abandoned the parallel litigation strategy and sought outside counsel that would "represent" Jones against the City while remaining amenable to the City's litigation goals. The objective was to use Jones's class action lawsuit in *Jones v. City of Los Angeles* to settle all of the outstanding claims arising out of LADWP billing discrepancies, and to recover the costs of the settlement in a subsequent suit against PwC. Paradis pleaded guilty to a bribery charge and admitted to accepting $2.175 million in kickbacks from Landskroner after Landskroner had been awarded $10.3 million in attorney's fees. Peters pleaded guilty to aiding and abetting extortion by directing Kiesel to make hush money payments to a former employee who had threatened to release documents revealing the fraudulent nature of the *Jones* settlement.

## B.

Throughout the pretrial proceedings, PwC had raised the possibility of discovery sanctions, but the trial court had instructed PwC to wait until the close of discovery to move for

sanctions so the court could address the motions on a complete record. After the City voluntarily dismissed its suit against PwC and the court declined to order further discovery, PwC proceeded to file a motion for monetary sanctions for the City's discovery misconduct under Code of Civil Procedure sections 2023.010 (section 2023.010) and 2023.030 (section 2023.030). In its motion, PwC argued that the City had engaged in numerous misuses of the discovery process, by:

(1) asserting privileges in bad faith to prevent discovery of the *Jones v. PwC* draft complaint, in violation of section 2023.010, subdivision (e);

(2) misrepresenting and concealing facts at the December 2017 hearing to avoid production of the draft complaint (§ 2023.010, subds. (e), (f), (h));

(3) refusing to comply with the January 2018 order directing production of a PMQ witness and filing a motion to quash the PMQ deposition notice (§ 2023.010, subds. (d), (e), (g), (h));

(4) giving false and incomplete responses to PwC's requests for documents transmitted between LADWP and Jones's counsel before August 7, 2015 (§ 2023.010, subds. (d)–(f));

(5) failing to produce responsive, nonprivileged documents to PwC's April 2018 deposition notice for the PMQ (§ 2023.010, subds. (d), (g));

(6) providing false testimony and leaving the September 2018 PMQ deposition without substantial justification (§ 2023.010, subds. (d)–(g));

(7) bringing a motion for a protective order without substantial justification to prevent further PMQ testimony and without trying to resolve the dispute informally (§ 2023.010, subds. (e), (h), (i));

(8) asserting a right to withhold the draft complaint under a "common interest privilege" (§ 2023.010, subds. (e), (f), (h));

(9) failing to produce relevant documents from Peters's computer hard drive (§ 2023.010, subds. (d), (g));

(10) spoliating evidence through Clark's destruction of notes of interviews he conducted to prepare for his PMQ deposition (§ 2023.010, subds. (d), (g)); and

(11) testifying evasively about the City's knowledge of the collusive nature of the class action (§ 2023.010, subd. (f)). (*City of L.A.*, *supra*, 84 Cal.App.5th at p. 491.)

PwC sought $2,801,946.49 in attorney's fees and costs incurred in connection with its efforts to compel production of the draft *Jones v. PwC* complaint, $4,259,529.14 in fees resulting from the City's attempt to conceal its participation in the collusive litigation scheme, and $1,149,907.90 in fees for the time spent preparing the sanctions motion. (*City of L.A.*, *supra*, 84 Cal.App.5th at p. 495.)

After a hearing, the trial court granted PwC's motion for sanctions. The court concluded that "Code of Civil Procedure section 2023.030 authorizes a trial court to direct any party or attorney who has engaged in the misuse of the discovery process to pay the reasonable expenses, including attorneys' fees incurred, as a result of that conduct." "Misuses of the discovery process include, among other things, failing to respond or to submit to an authorized method of discovery, making without substantial justification an unmeritorious objection to

discovery, making an evasive response to discovery, disobeying a court order to provide discovery, and making or opposing unsuccessfully and without substantial justification a motion to compel to limit discovery. Code Civ. Proc., section 2023.010." The court also concluded that sanctions could be imposed under its "inherent power to deal with litigation abuse." Finding a "serious abuse of discovery by the City and its counsel," the court awarded PwC $2.5 million in sanctions against the City.

## C.

The City appealed the sanctions award on two grounds: that the trial court lost jurisdiction to issue the order once the case was dismissed and that PwC's sanctions motion was untimely. (*City of L.A.*, *supra*, 84 Cal.App.5th at pp. 511, 513.) The Court of Appeal unanimously rejected both arguments. But the court ordered additional briefing on an issue the City had not previously raised, namely, whether the trial court had authority to impose the sanctions award under sections 2023.010 and 2023.030. By a divided vote, the court concluded that the trial court lacked such authority. (*City of L.A.*, *supra*, 84 Cal.App.5th 466.)

The majority concluded that sections 2023.010 and 2023.030 do not independently authorize trial courts to impose monetary sanctions for discovery misuse, but instead supply definitions relevant to other provisions of the Civil Discovery Act (Act) that authorize imposing sanctions for specified abuses of enumerated discovery methods, such as making an unmeritorious motion for a protective order or failing to serve a timely response to a demand for inspection. (*City of L.A.*, *supra*, 84 Cal.App.5th at p. 504; see Code Civ. Proc., §§ 2031.060, 2031.300.) The court reasoned that while section 2023.030

contains language stating that courts "may impose" various types of sanctions (including monetary sanctions) for discovery misuse, the provision also specifies that courts may impose such sanctions only "[t]o the extent authorized by" other provisions of the Act. (§ 2023.030; see *City of L.A.*, at p. 498.) The majority acknowledged that several appellate cases had appeared to award sanctions based solely on sections 2023.010 and 2023.030, but it declined to follow them, explaining that none of the cases had carefully considered the meaning of the "[t]o the extent authorized" language in section 2023.030. (*City of L.A.*, at pp. 505, 506, 510.)

The majority considered in the alternative whether the trial court had the inherent authority to impose the sanctions order. It answered no. The majority cited this court's decision in *Bauguess v. Paine* (1978) 22 Cal.3d 626, 634–638 (*Bauguess*), which had held that a trial court lacked inherent authority to impose monetary sanctions in lieu of contempt sanctions, in the absence of statutory authority guiding the exercise of the power. (*City of L.A.*, *supra*, 84 Cal.App.5th at p. 511.) The majority concluded that a party seeking monetary sanctions for discovery misuse therefore must rely on the discovery-method-specific sanctions provisions of the Civil Discovery Act alone. It reversed and remanded the sanctions order "to allow the trial court to award PWC's reasonable expenses incurred as a result of sanctionable conduct under provisions of the Discovery Act other than sections 2023.010 and 2023.030." (*City of L.A.*, at p. 514.)

Justice Grimes dissented. She criticized "the majority's novel conclusion" that sections 2023.010 and 2023.030 do not confer general authority to impose sanctions for discovery abuse. (*City of L.A.*, *supra*, 84 Cal.App.5th at p. 528 (conc. & dis.

14

opn. of Grimes, J.).)  In her view, the majority's reading of the Civil Discovery Act — "that the only way a trial court can deal with an egregious pattern of stonewalling and falsity in discovery responses is by adhering to the procedural prerequisites of each separate discovery statute for each particular discovery violation" — "does not . . . comport with Legislative intent, much less with decades of precedent."  (*City of L.A.*, at p. 536 (conc. & dis. opn. of Grimes, J.).)

We granted PwC's petition for review to clarify the scope of a trial court's authority to award monetary sanctions for abuses of the discovery process.  We now hold that the trial court had the authority to impose monetary sanctions under sections 2023.010 and 2023.030.

## II.

Sections 2023.010 and 2023.030 were enacted as part of the Civil Discovery Act of 1986 (1986 Act), a " 'comprehensive revision of the statutes governing discovery' " in California courts.  (*Emerson Electric Co. v. Superior Court* (1997) 16 Cal.4th 1101, 1108; see Stats. 1986, ch. 1334, § 2, pp. 4700–4743.)[1]  Before 1986, discovery in civil cases was governed by the

_____

[1]  "Effective July 1, 2005, the Civil Discovery Act of 1986 (Code Civ. Proc., §§ 2016–2036) was repealed and reenacted without substantive changes by the Civil Discovery Act of 2004 (Code Civ. Proc., § 2016.010 et seq.)."  (*People v. Buenrostro* (2018) 6 Cal.5th 367, 397, fn. 16, citing Stats. 2004, ch. 182, § 61 ["Nothing in this act is intended to substantively change the law of civil discovery."].)  As relevant here, the Civil Discovery Act of 2004 renumbered what was formerly section 2023, subdivision (a) as section 2023.010, and what was formerly section 2023, subdivision (b) as section 2023.030.  (Discovery Act Correlation Tables, reprinted in 2 Hogan & Weber, Cal. Civil Discovery (2d

Discovery Act of 1957 (1957 Act), which had been "the California Legislature's first attempt to codify a comprehensive system of discovery procedures in California." (Mares, *The California Civil Discovery Act of 1986: Discovery the New-Fashioned Way!* (1989) 18 Sw.U. L.Rev. 233, 233 (Mares).) To curtail surprises and enhance efficient trial preparation, the 1957 Act provided for new methods of discovery and "liberalized" each method "as to person, scope, and situation." (*Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 375 (*Greyhound*).) But "[t]o protect against the abuses of the liberality thus created, safeguards were provided unknown to the old California procedures." (*Id.* at pp. 375–376.)

One such safeguard was found in Code of Civil Procedure section 2034, which for the first time conferred statutory authority on trial courts to impose sanctions for certain abuses of the discovery process. (See *Greyhound, supra,* 56 Cal.2d at pp. 376–377; see generally Louisell, *Discovery Today* (1957) 45 Cal. L.Rev. 486, 508–512 [discussing Code Civ. Proc., § 2034].) But over time, section 2034 increasingly came under criticism for failing to adequately respond to the problem of discovery abuse. (See Tonegato, *The Decline and Fall of Sanctions in California Discovery: Time to Modernize California Code of Civil Procedure Section 2034* (1974) 9 U.S.F. L.Rev. 360, 361–362; Mares, *supra,* 18 Sw.U. L.Rev. at pp. 240–241; Donovan, *The Sanction Provision of the New California Civil Discovery*

_____

ed. 2005) appen. B.) Throughout this opinion, we refer to the provisions of the Act as they appear following the 2004 legislation. All citations are to the present version of the Act unless otherwise indicated.

*Act, Section 2023:  Will It Make a Difference or Is It Just Another "Paper Tiger"?* (1988) 15 Pepperdine L.Rev. 401, 402.)  "[C]ase law increasingly was required to fill in the gaps."  (Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2023) ¶ 8:3, p. 8A-2.)

In *Fairfield v. Superior Court* (1966) 246 Cal.App.2d 113 (*Fairfield*), for example, the trial court exercised its inherent power to control the litigation to impose an award of attorney's fees against a party that had refused to obey an order compelling further answers to interrogatories.  Although no section of the 1957 Act expressly provided for monetary sanctions in this circumstance, the Court of Appeal held that the court was nonetheless empowered to "impose appropriate sanctions of the nature provided in" the sanctions provision of the 1957 Act. (*Fairfield*, at p. 120.)  It reasoned that "[e]very court has power 'To compel obedience to its judgments, orders and process' in an action or proceeding pending before it, and to use all necessary means to carry its jurisdiction into effect, even if those means are not specifically pointed out in the code."  (*Ibid.*)

After decades of experience under the 1957 Act revealed similar gaps in the statute's coverage, "a Joint Commission on Discovery of the State Bar and Judicial Council began a top-to-bottom reexamination of California's system [of] civil discovery." (1 Hogan & Weber, Cal. Civil Discovery (2d ed. 2005) Introduction to Civil Discovery, § 1.3, p. 1-6.)  As part of this effort, "[t]he Commission identified discovery abuses under the 1956 [*sic*] Act" and "developed proposals to eliminate or ameliorate those abuses.  In addition, it codified much of the extensive case law that had settled issues arising under the 1956 [*sic*] Act."  (*Ibid.*)  It then made recommendations that were

ultimately enacted, with some amendments, as part of the 1986 Act.  (1 Hogan & Weber, *supra*, § 1.3, p. 1-6.)

The Civil Discovery Act sets out six methods by which litigants can obtain pretrial disclosure of relevant information: (a) depositions; (b) interrogatories; (c) inspections of documents, things, and places; (d) physical and mental examinations; (e) requests for admissions; and (f) exchanges of expert trial witness information.  (Code Civ. Proc., § 2019.010.)  The procedures relevant to discovery under each of these six methods are outlined in different chapters of the Act.  For example, Chapters 9 through 11 govern oral and written depositions (Code Civ. Proc., §§ 2025.010–2028.080), while Chapter 13 governs interrogatories (*id*., §§ 2030.010–2030.410).

Each chapter authorizes sanctions for certain conduct constituting misuse or abuse of different discovery methods.  For example, a provision in the chapter on oral depositions, Code of Civil Procedure section 2025.450, sets out a scheme of escalating sanctions for a party that refuses to comply with a deposition notice.  Subdivision (a) provides that a party who serves a deposition notice "may move for an order compelling the deponent's attendance and testimony, and the production for inspection of any document . . . described in the deposition notice," if the deponent "fails to appear for examination, or to proceed with it, or to produce for inspection any document . . . described in the deposition notice," "without having served a valid objection."  (Code Civ. Proc., § 2025.450, subd. (a).)  Subdivision (g)(1) then states:  "If a motion under subdivision (a) is granted, the court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) in favor of the party who noticed the deposition," unless the court finds that the opposing party acted with substantial justification or that

sanctions would be unjust under the circumstances. (*Id.*, § 2025.450, subd. (g)(1).) If the opposing party fails to obey the court's order, "the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under Chapter 7 (commencing with Section 2023.010) . . . ." (*Id.*, § 2025.450, subd. (h).)

Each of the provisions that authorizes a court to impose sanctions states that such sanctions may (or shall) be imposed "under Chapter 7 (commencing with Section 2023.010)." ( Code Civ. Proc., §§ 2028.050, subd. (c), 2030.090, subd. (d), 2033.080, subd. (d), among others.)

The referenced chapter, titled "Sanctions," contains the provisions central to the question presented in this case. The first of these provisions, section 2023.010, states: "Misuses of the discovery process include, but are not limited to, the following: [¶] (a) Persisting, over objection and without substantial justification, in an attempt to obtain information or materials that are outside the scope of permissible discovery. [¶] (b) Using a discovery method in a manner that does not comply with its specified procedures. [¶] (c) Employing a discovery method in a manner or to an extent that causes unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. [¶] (d) Failing to respond or to submit to an authorized method of discovery. [¶] (e) Making, without substantial justification, an unmeritorious objection to discovery. [¶] (f) Making an evasive response to discovery. [¶] (g) Disobeying a court order to provide discovery. [¶] (h) Making or opposing, unsuccessfully and without substantial justification, a motion to compel or to limit discovery. [¶] (i) Failing to confer in person, by telephone, or by letter with an opposing party or attorney in

a reasonable and good faith attempt to resolve informally any dispute concerning discovery, if the section governing a particular discovery motion requires the filing of a declaration stating facts showing that an attempt at informal resolution has been made."

The second provision, section 2023.030, states, as relevant here: "To the extent authorized by the chapter governing any particular discovery method or any other provision of this title, the court, after notice to any affected party, person, or attorney, and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process: [¶] (a) The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. The court may also impose this sanction on one unsuccessfully asserting that another has engaged in the misuse of the discovery process, or on any attorney who advised that assertion, or on both. If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2023.030, subd. (a).)

Section 2023.030, subdivisions (b) through (e) similarly provide that a "court may impose" issue sanctions, evidence sanctions, terminating sanctions, and contempt sanctions, respectively, but none mandates imposition of these various nonmonetary sanctions in the same manner as subdivision (a). (See, e.g., *id.*, subd. (b) ["The court may impose an issue sanction ordering that designated facts shall be taken as established in

20

the action in accordance with the claim of the party adversely affected by the misuse of the discovery process. The court may also impose an issue sanction by an order prohibiting any party engaging in the misuse of the discovery process from supporting or opposing designated claims or defenses."].)

Courts have articulated two major guidelines for imposing sanctions under both the current Civil Discovery Act and its predecessor. First, because the very purpose of discovery is to promote the efficient and effective conduct of trial, discovery sanctions are not to be used "to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits." (*Crummer v. Beeler* (1960) 185 Cal.App.2d 851, 858.) Second, a more severe sanction is disfavored if a lesser sanction is available. (*In re De La Parra* (1986) 184 Cal.App.3d 139, 144–145 [reversing a contempt sanction imposed for refusing to answer interrogatories as "unnecessary and overbearing" in light of "alternative solutions"].) This means that a court ordinarily must consider monetary sanctions — the form of sanctions ordered here — before it proceeds to consider whether other nonmonetary sanctions are appropriate to address the misconduct at issue.

Much as they had done under the 1957 Act, courts have sometimes invoked their inherent authority to impose discovery sanctions not inconsistent with the current version of the Act. (See, e.g., *Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 761 (*Slesinger*) [imposing terminating sanction]; *Peat, Marwick, Mitchell & Co. v. Superior Court* (1988) 200 Cal.App.3d 272, 287, fn. 8, 289 (*Peat*) [imposing evidentiary sanction].) The existence of such inherent authority is not disputed here. The City contends, however, that courts' inherent authority is limited to nonmonetary sanctions. It

argues that the trial court therefore lacked either statutory authority or the inherent authority to impose the monetary sanctions award at issue in this case. Our inquiry begins — and also ends — with the trial court's statutory authority.

## III.

Before the Court of Appeal's decision in this case, courts frequently cited sections 2023.010 and 2023.030 as sources of authority to impose sanctions for discovery misuse. (See, e.g., *Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 73–74 [concluding that the trial court was required to impose monetary sanctions under section 2023.030, subd. (a) after it found that plaintiffs had engaged in repeated discovery misuses by submitting false deposition testimony and destroying evidence in bad faith]; *Pratt v. Union Pacific Railroad Co.* (2008) 168 Cal.App.4th 165, 170 [concluding that §§ 2023.010 and 2023.030, subd. (a) authorized the trial court to impose monetary sanctions when the defendant made repeated ex parte demands for the plaintiff's medical information that "circumvented the established procedures for civil discovery under California law"]; cf. *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 12 (*Cedars-Sinai*) [concluding it is unnecessary to create a tort cause of action for intentional spoliation of evidence because, inter alia, §§ 2023.010 and 2023.030 already authorize "potent" sanctions for such discovery misuse].)[2]

---

[2] Numerous other decisions have affirmed an award of sanctions while citing section 2023.030 or its predecessor as a source of sanctioning authority. (See *Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1084; *Department of Forestry*

The Court of Appeal in this case acknowledged cases reflecting this prevailing understanding of sections 2023.010 and 2023.030.  But as the court correctly noted, none of these cases carefully considered the language of the provisions in their broader statutory context.  (*City of L.A.*, *supra*, 84 Cal.App.5th 466.)  The primary question before us is whether the Court of Appeal was correct in concluding — contrary to the prevailing understanding — that sections 2023.010 and 2023.030 do not confer any independent authority to impose sanctions for discovery abuses.

This is purely a question of statutory interpretation, and we review it de novo.  (*In re E.F.* (2021) 11 Cal.5th 320, 326.)  We start, as always, with the text.  (*In re A.N.* (2020) 9 Cal.5th 343, 351.)  " 'If we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views.' "  (*Id.* at pp. 351–352.)   Ultimately, we must " ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than

---

*& Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 191–192; *Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390; *Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 877–880; *Tucker v. Pacific Bell Mobile Services* (2010) 186 Cal.App.4th 1548, 1561; *Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1287; *Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1214; *Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1162–1163; *Pate v. Channel Lumber Co.* (1997) 51 Cal.App.4th 1447, 1455–1456; *Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545–1546; *Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 35–36.)

defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' " (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272; see also *Caryl Richards, Inc. v. Superior Court* (1961) 188 Cal.App.2d 300, 303 [the Civil Discovery Act "is to be liberally interpreted so that it may accomplish its purpose"].)

## A.

Section 2023.010 addresses the general subject of "[m]isuses of the discovery process." Such misuses, it says, "include, but are not limited to," failures to respond or submit to authorized methods of discovery, making unmeritorious objections without substantial justification, and making evasive responses. (§ 2023.010; see *id.* at subds. (d)–(f).) It is undisputed that the misconduct the trial court found in this case qualifies as discovery misuse within the meaning of section 2023.010. It is also, however, undisputed that section 2023.010 contains no language authorizing action in response to the sorts of discovery misuses it describes.

The focus of the dispute before us thus centers largely on the interaction between section 2023.010 and section 2023.030. The latter section contains language that, on its face, appears to authorize action addressing the sort of discovery misuse described in section 2023.010, including imposition of monetary sanctions: "To the extent authorized by the chapter governing any particular discovery method or any other provision of this title, *the court . . . may impose* the following sanctions against anyone engaging in conduct that is a misuse of the discovery process: [¶] . . . *The court may impose* a monetary sanction." (§ 2023.030 & subd. (a), italics added.) The central question concerns the meaning of the prefatory phrase indicating that a

court may impose sanctions "[t]o the extent authorized" by other provisions of the Civil Discovery Act, including, primarily, the provisions governing the six different methods of discovery.[3]

Both parties agree that the prefatory phrase "[t]o the extent authorized" signals a limitation on the court's authority to impose sanctions, but they disagree as to the scope of this limitation. PwC reads this provision to mean simply that when another, more specific provision of the Civil Discovery Act sets conditions or limits on a trial court's authority to sanction particular forms of discovery misuse, a court may not circumvent those limits by relying on the general authority conferred in section 2023.030; sanctions may be ordered under this general provision only "[t]o the extent" they may be ordered under the other, more specific sanctions provision. But when no other provision applies, courts may rely on the general authority conferred in section 2023.030 to impose sanctions for any

---

[3] We, like the litigants and many Courts of Appeal, focus primarily on the method-specific chapters of the Civil Discovery Act. (See, e.g., *New Albertsons*, *Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422 (*New Albertsons*); *London v. Dri-Honing Corp.* (2004) 117 Cal.App.4th 999, 1004 (*London*).) These are the sanctions provisions most relevant to the issues in this case. But section 2023.030, by its terms, refers to sanctions that may be authorized "by the chapter governing any particular discovery method *or any other provision of this title*." (Italics added.) Another source of sanctions authority can be found in section 2023.030's neighboring provision, which states: "Notwithstanding the outcome of the particular discovery motion, the court shall impose a monetary sanction ordering that any party or attorney who fails to confer as required pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (Code Civ. Proc., § 2023.020.)

"[m]isuse[] of the discovery process," as that term is defined in section 2023.010.

Although the City had not initially broached the argument, it now adopts the contrary reading laid out in the Court of Appeal majority opinion. Specifically, the City argues that the plain meaning of the prefatory phrase instructs that the sort of sanctions described in section 2023.030 must be authorized by another provision of the Civil Discovery Act. According to the City, sections 2023.010 and 2023.030 confer no sanctions authority of their own; their primary function is to supply the definitions relevant for authority conferred elsewhere. So, for example, a method-specific provision might supply authority for imposing "monetary sanctions" for failing to allow the inspection of an item in discovery (e.g., Code Civ. Proc., § 2031.300), and section 2023.030 then tells us what the term "monetary sanction[s]" means: an "order[] that one . . . pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of" a misuse of the discovery process. (§ 2023.030, subd. (a).) But, as the City sees it, if no other sanctions provision of the Civil Discovery Act applies, a court has no authority to impose discovery sanctions under the Act.

To describe this as the "plain meaning" of the relevant statutory language is something of a bold claim, given that for decades commentators and courts — this court included — have read the provision differently. (See, e.g., Donovan, *The Sanction Provision of the New California Civil Discovery Act, Section 2023: Will It Make a Difference or Is It Just Another 'Paper Tiger'?*, *supra,* 15 Pepperdine L.Rev. at p. 411 [arguing that § 2023 of the 1986 Act "leaves full discretion with the courts to decide whether acts not specifically mentioned in the new statute do, in fact, constitute a misuse and require the

imposition of monetary sanctions"]; Levine et al., *O'Connor's Cal. Practice* (2015 ed.) Civil Pretrial, § 5, p. 1008 ["If the sanctions provisions for the particular discovery method do not address the misconduct . . . the party should then explore the possibility of sanctions under the [Civil Discovery Act's] more general provisions."]; see also *ante*, pp. 21–22 & fn. 2 [citing cases].) And indeed, consistent with that prevailing understanding, the City did not initially question the trial court's authority to impose sanctions under sections 2023.010 and 2023.030; the Court of Appeal was the first to raise the issue, sua sponte, when it ordered supplemental briefing to address the meaning of these provisions.

Differences in understanding are not, of course, dispositive. And as the Court of Appeal majority rightly noted, none of the cases that have cited sections 2023.010 and 2023.030 as a source of sanctions authority have engaged in a close analysis of the statutory text. But it is not surprising that courts have generally understood the Civil Discovery Act's sanctions provisions as they have. Though the City insists otherwise, its reading of section 2023.030 is far from the only plausible one.

To start, any claim that section 2023.030 is primarily a definitional provision must contend with the fact that section 2023.030 is not written as most definitional provisions are written. The Civil Discovery Act does contain a standard definitional provision: Code of Civil Procedure section 2016.020 (titled "Definitions") says, for instance, that "[a]s used in this title," " 'Document' and 'writing' mean a writing, as defined in Section 250 of the Evidence Code." (Code of Civ. Proc., § 2016.020 & subd. (c).) Had the Legislature intended for section 2023.030 to serve a definitional function, the Legislature presumably could have used similar phrasing. Section 2023.030

27

could have said, for example, that, "as used in this title," the term "monetary sanctions" means "an order to pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of a misuse of the discovery process." But the Legislature instead used the sort of language conventionally used to convey authority: The court "may impose the following sanctions," including monetary sanctions (§ 2023.030, subd. (a); cf., e.g., *In re Richard E.* (1978) 21 Cal.3d 349, 354 ["The ordinary import of 'may' is a grant of discretion."]). It is not unreasonable to think that this choice was deliberate.

The City's view must also contend with the natural inferences to be drawn from the close relationship between section 2023.030 and its neighbor, section 2023.010, which includes a nonexhaustive definition of discovery misuse more encompassing than any of the more specific chapters addressing the misuse of particular discovery methods. (§ 2023.010 ["Misuses of the discovery process include, *but are not limited to*, the following . . . ."].) This broad definition thus naturally covers forms and patterns of discovery abuse not captured elsewhere in the statute. The scope of the conduct described in section 2023.010 as a "[m]isuse[] of the discovery process" suggests a similar scope for section 2023.030, which provides that courts "may impose" appropriate sanctions for "a misuse of the discovery process." (§§ 2023.010, 2023.030.) If section 2023.030 does not supply any mechanism for addressing the kinds of discovery misuse described in section 2023.010, the effect is to leave section 2023.010's broad definition of misuse without any real significance in the statutory scheme.

To be fair, the use of the introductory phrase "[t]o the extent authorized by . . . any other provision of this title" does raise questions about whether section 2023.030 means to refer

the reader to other provisions to look for authority to impose sanctions. (§ 2023.030.) But the introductory phrase carries less weight than the City supposes, because when readers look to most of these other provisions, what they will find is language that directs them right back to section 2023.030. One provision of the inspection chapter addressing monetary sanctions, for instance, provides: "[E]xcept as provided in subdivision (d), the court shall impose a monetary sanction *under Chapter 7 (commencing with Section 2023.010)* against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel." (Code Civ. Proc., § 2031.300, subd. (c), italics added.) Other method-specific sanctions provisions are worded more or less identically. (E.g., *id.*, §§ 2025.480, subd. (j), 2030.300, subd. (d).) In other words, if the "[t]o the extent authorized" language in section 2023.030 seems to point to the sanctions authority conferred by provisions in the method-specific chapters of the Act, the method-specific chapters appear to point right back to section 2023.030 and the other provisions of Chapter 7 as a source of the authority to impose sanctions. (See *London*, *supra*, 117 Cal.App.4th at p. 1004 [observing the "circular fashion" in which the sanctions provisions refer to each other]; cf. *Key Tronic Corp. v. United States* (1994) 511 U.S. 809, 816 [a statute referencing "a 'civil action . . . under section 9607(a)' " implies that "the statute . . . authorizes a cause of action" in that section].) The City's argument about the plain language of section 2023.030 thus fails to account not only for the wording of section 2023.030 itself, but also for the wording of the other provisions on which the argument depends.

The City relies on appellate decisions holding that the " '[t]o the extent authorized' " language means that "the statutes governing the particular discovery methods limit the

permissible sanctions to those sanctions provided under the applicable governing statutes." (*New Albertsons, supra,* 168 Cal.App.4th at p. 1422; see also, e.g., *London, supra,* 117 Cal.App.4th at p. 1006; *Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 906 (*Muller*).) These cases have held that, in determining whether and what sort of sanction to order for misuse of a particular discovery method — monetary sanctions, issue sanctions, and so on — a court is ordinarily limited to those sanctions authorized by the relevant method-specific chapter. In *New Albertsons,* for instance, the court held that a trial court does not have the statutory authority under section 2023.030 to impose an issue sanction or an evidence sanction for failure to permit inspection of an item when, under the circumstances, the chapter on inspections would not authorize imposing such sanctions. (See *New Albertsons,* at pp. 1423–1424, 1427–1428, 1434 [concluding that the trial court erred in imposing issue and evidence sanctions in the absence of an order compelling the inspection, as specified in the relevant method-specific chapter].)

The City relies on cases like *New Albertsons* to support its argument that the "[t]o the extent" language means that section 2023.030 cannot be read as an independent source of sanctions authority. But these cases stand for a different proposition, one that is undisputed here. As we have noted, PwC agrees that the general sanctions language in section 2023.030 does not permit courts to override the limitations on courts' sanctions authority set forth in applicable method-specific provisions. This follows from the usual interpretive rule that " 'more specific provisions take precedence over more general ones.' " (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 634; see *Muller, supra,* 172 Cal.App.4th at p. 906.)

As PwC rightly notes, it is one thing to read the "[t]o the extent authorized" language to mean that the authority recognized in section 2023.030 cannot extend farther than the authority conferred by other applicable sanctions provisions, assuming other sanctions provisions are applicable. It is something else to say that section 2023.030 confers no sanctions authority at all — even for those relatively uncommon instances that may involve patterns of systemic abuse that transcend any individual instance of misuse, or in situations where the conduct undoubtedly meets section 2023.010's definition of discovery misuse even though there are no other applicable sanctions provisions. The *New Albertsons* line of cases do not speak to this issue, nor do they support the City's argument that the plain language of section 2023.030 marks it as definitional only.

The City is, in short, incorrect that the plain language of section 2023.030 means it confers no independent authority to impose sanctions. On the contrary, section 2023.030 contains language that, on its face, appears to confer such authority. That reading is reinforced, rather than undermined, by the language of other provisions in the Act relating to discovery sanctions.

## B.

All this said, we acknowledge that the City's reading is not wholly implausible. The City's reading of the "[t]o the extent authorized" phrase certainly is not compelled by the plain language, but we cannot say that it is clearly wrong, either. In the face of this textual ambiguity, we may turn to extrinsic aids to " 'select the construction that comports most closely with the apparent intent of the Legislature.' " (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977.)

The City relies heavily on legislative history to support its reading. It relies, in particular, on the Reporter's Notes for the Commission that formulated the 1986 Act. The Reporter's Notes describe the intended roles of sections 2023.010 and 2023.030 in distinctly modest terms. Regarding section 2023.010 (former § 2023, subd. (a)), the Reporter's Note states: "Because of the widespread concern with abuse of the discovery process at the present time, the Commission deems it desirable to list in a general way the major categories of actions that it regards as an abuse. . . . It is arguable that, in view of the detailed regulations of the discovery process in the various sections governing the individual methods of discovery, this subdivision is unnecessary. However, the Commission feels that the subdivision underscores the importance of conducting discovery in a manner that does not abuse the methods provided to achieve its goals." (2 Hogan & Weber, *supra*, appen. D, Proposed Cal. Civil Discovery Act of 1986, and Reporter's Notes, pp. AppD-19 to AppD-20 [reprint of State Bar/Judicial Council of Cal., Jud. Com. on Discovery Reporter's notes on former § 2023, subd. (a)].)

Of section 2023.030 (former § 2023, subd. (b)), the Reporter's Note states: "This subdivision, derived from the present [Code of Civil Procedure] § 2034, is mainly definitional in function. Throughout the proposed [1986] Act, the sanctions that may be imposed for any particular discovery dereliction are described simply as a 'monetary sanction,' an 'issue sanction,' an 'evidence sanction,' a 'terminating sanction,' or a 'contempt sanction,' followed by a cross-reference to this section to ascertain just what those terms mean. This subdivision enables the Commission to implement in a manageable way its decision that the sanctions available for a particular breach of a

discovery duty should be specified in any particular section of the [1986] Act that creates that duty." (2 Hogan & Weber, *supra*, appen. D, Proposed Cal. Civil Discovery Act of 1986, and Reporter's Notes, p. AppD-20 [Reporter's notes on former § 2023, subd. (b)].)

The City also cites the separate writings of the Reporter, Professor James Hogan, who later wrote in his treatise on California Civil Discovery law that "[t]he most cursory examination of Section 2023.030 reveals that it is only a lexicon. . . . Indeed, Section 2023.030 states that a court may impose any of the sanctions it defines only '[t]o the extent authorized by the section governing any particular discovery method.'" (2 Hogan & Weber, *supra*, § 15.2, p. 15-3.)

The City is correct that the Reporter's Notes, and the Reporter's own subsequent writings, in his personal capacity, conform to its understanding of section 2023.030. (It is true that the Reporter's Notes say that § 2023.030 was meant to be "*mainly* definitional," not *solely* definitional, but the Reporter's Notes offer a reason for the adverb choice: "The proposed subdivision makes a subtle change in the language used to describe when a monetary sanction may be imposed," requiring imposition of such a sanction unless the court "'finds that the one subject to the sanction acted with substantial justification or that other circumstances make the sanction unjust.'" (2 Hogan & Weber, *supra*, appen. D, Proposed Cal. Civil Discovery Act of 1986, and Reporter's Notes, p. AppD-20, italics added [Reporter's notes on former § 2023, subd. (b)].) The Reporter's Notes do not mention any other way in which § 2023.030 was meant to serve a more-than-definitional function.)

The Reporter's commentary does not, however, resolve the issue now before us. It is undoubtedly true that section 2023.030 *typically* does serve a primarily definitional function, in that other provisions of the Civil Discovery Act specify the sanctions available for the most frequently recurring types of discovery abuse. The issue of the sanctions authority independently conferred in sections 2023.010 and 2023.030 is relevant only in those unusual cases in which the discovery abuse takes a different form. Neither the Reporter's Notes nor Professor Hogan's separate writings clearly address this situation, so neither gives much reason to resolve the textual ambiguity here in the restrictive manner the City suggests.

## C.

This brings us to our final, and ultimately dispositive, consideration, which concerns how the City's proposed interpretation would serve — or, as it happens, disserve — the Legislature's overarching purposes in enacting the sanctions provisions of the Civil Discovery Act.

Again, in the vast majority of cases, the distinction between the parties' proposed interpretations of section 2023.030 makes no practical difference. The method-specific chapters were deliberately designed to cover the most commonly recurring forms of discovery misuse. Whether a court is to look for statutory authority in those chapters, or to section 2023.030, or both, the outcome is the same: The court may impose those sanctions that are authorized by the more specific provision in the chapter governing the relevant discovery method.

But it is not clear that every act of discovery misconduct is covered by the discovery method chapters. As Justice Grimes noted in her dissent in the Court of Appeal, for instance, "the

34

chapters of the Discovery Act governing particular discovery methods do not mention sanctions for spoliation of evidence" (*City of L.A.*, *supra*, 84 Cal.App.5th at p. 534 (conc. & dis. opn. of Grimes, J.)), even though, as this court has recognized, intentional spoliation "would surely be a misuse of discovery within the meaning" of section 2023.010 (*Cedars-Sinai*, *supra*, 18 Cal.4th at p. 12).[4]

And it is undisputed that no method-specific provision of the Act addresses pervasive patterns of discovery misconduct of the sort that occurred in this case. This pattern of misconduct certainly included various discrete acts of discovery misconduct that would be individually redressable under certain chapters governing discovery methods. (E.g., Code Civ. Proc., §§ 2025.450, subd. (a) [providing sanctions for failure of a party deponent "to appear for examination, or to proceed with it, or to produce for inspection any document . . . described in the deposition notice"], 2031.320 [providing sanctions for a party's failure to produce items in response to a demand for inspection].) But the power to sanction discrete abuses of specific discovery

---

[4] It is for this reason that *Cedars-Sinai* read section 2023.030 as providing authority to sanction spoliation of evidence. (*Cedars-Sinai*, *supra*, 18 Cal.4th at p. 12.) The Court of Appeal majority in this case offered an alternative theory: that spoliation cases may instead be covered under method-specific provisions, insofar as a party's spoliation of evidence makes it impossible or futile to employ the usual methods for discovering it. (*City of L.A.*, *supra*, 84 Cal.App.5th at pp. 507, 509.) We express no view on this alternative theory of spoliation sanctions. The larger point remains: The discovery method chapters cover the most frequent acts of discovery misconduct, but it is unclear that they can be stretched enough to cover them all. This is a substantial point in favor of adhering to *Cedars-Sinai* and the view of section 2023.030 expressed there.

methods — for instance, the City's initial refusal to produce a PMQ witness and the witness's later failure to adequately prepare for the deposition — is not the same thing as the power to sanction a concerted, multi-year campaign to circumvent discovery that would have revealed serious abuses in the initiation and prosecution of the lawsuit.

The issue in this case, at core, concerns courts' power to fill these sorts of gaps in the method-specific discovery chapters to address egregious instances of discovery misconduct. As noted, the City does not dispute that the courts generally do have such powers. It does not dispute, for instance, the holdings of cases that have invoked the courts' inherent authority to impose a variety of serious discovery sanctions, including evidence sanctions (*Peat, supra*, 200 Cal.App.3d at pp. 287, fn. 8, 289), and even terminating sanctions (*Department of Forestry & Fire Protection v. Howell*, *supra*, 18 Cal.App.5th at p. 197; *Slesinger*, *supra*, 155 Cal.App.4th at p. 761). But the City distinguishes these cases on grounds that they involved sanctions other than monetary sanctions. It reads our decision in *Bauguess* as precluding monetary sanctions unless they have a statutory basis, lest trial courts "be given a power without procedural limits" set by statute. (*Bauguess*, *supra*, 22 Cal.3d at p. 638.)

The implication of the City's approach is that courts could address egregious cases involving patterns of discovery misconduct, or other similarly rarely occurring forms of discovery misuse, only through the exercise of their inherent authority, with no statutory basis for the exercise. And on the City's reading of *Bauguess*, courts would retain the inherent authority to impose only the most serious forms of discovery sanctions, such as evidentiary or terminating sanctions; they

could not impose monetary sanctions, which the Act treats as the least serious form of sanctions. Of course, if the party abusing the discovery process dismisses its claims with prejudice, as the City has done here, then an evidentiary or terminating sanction would be futile, and a court would be all but powerless to address the abuse.

We see multiple difficulties with the City's approach. As a preliminary matter, we reject the City's premise that our precedent bars courts from exercising their inherent authority to impose monetary sanctions — but only monetary sanctions — in response to discovery abuses. The City relies on our decision in *Bauguess,* but *Bauguess* does not support the argument. *Bauguess* was not a discovery sanctions case. Rather, the trial court in *Bauguess* had declared a mistrial and imposed a monetary sanction when an attorney "looked at certain exhibits on which the jurors had taken notes." (*Bauguess*, *supra*, 22 Cal.3d at p. 632.) We determined that the court lacked the inherent authority to impose the monetary sanction; to recognize such an authority, we reasoned, would give courts the equivalent of the statutory contempt power, but "without procedural limits and potentially subject to abuse." (*Id.* at p. 638.) But in so holding, we expressly distinguished *Fairfield*, *supra*, 246 Cal.App.2d 113, discussed above, in which a court had used its inherent authority to impose monetary discovery sanctions not expressly authorized by the 1957 Civil Discovery Act. We explained that the discovery sanctions in *Fairfield* were permissible because they were "clearly consistent with the Legislature's intent in enacting the [1957] Civil Discovery Act."

(*Bauguess*, at p. 637.)[5] *Bauguess* thus does not stand for the proposition that courts lack inherent authority to impose monetary sanctions for discovery abuses; on the contrary, it affirms courts' authority to "address gaps in the law" of discovery "by applying procedures contained in related statutory provisions." (*Estrada v. Royalty Carpet Mills, Inc.* (2024) 15 Cal.5th 582, 597.)

More fundamentally, the City's view of how the system of statutory discovery sanctions works to address egregious discovery abuses is inconsistent with the overarching purposes of the Civil Discovery Act. "One of the principal purposes of the [1957] Act," which the 1986 Act built upon, was "to enable a party to obtain evidence in the control of his adversary in order to further the efficient, economical disposition of cases according to right and justice *on the merits*." (*Caryl Richards, Inc. v. Superior Court, supra*, 188 Cal.App.2d at p. 303.) The Legislature that enacted the 1986 Act was aware of gaps in the preexisting scheme of statutory sanctions, and it was also aware that some courts had invoked their inherent authority to fill those gaps. (1 Hogan & Weber, *supra*, § 1.3, pp. 1-5 to 1-6; see, e.g., *Fairfield, supra*, 246 Cal.App.2d at p. 113.) One of the central purposes of the 1986 Act, then, was to give courts the tools necessary to respond to those abuses to ensure that civil discovery can serve its central truth-seeking function. (See 2 Hogan & Weber, *supra*, § 15.1, p. 15-1 ["The wholesale

---

**5**    Although one Court of Appeal decision has understood *Bauguess* to apply to monetary discovery sanctions, it did not consider *Bauguess*'s discussion of *Fairfield*. (See *Slesinger, supra*, 155 Cal.App.4th at p. 764, fn. 19.) We disapprove *Stephen Slesinger, Inc. v. Walt Disney Co., supra*, 155 Cal.App.4th 736 on this point.

revision of civil discovery law through the Discovery Act of 1986 was due in good part to the Legislature's concern about discovery misuses that had developed during the three decades that the original [1957] Act was in operation."].)

Against this backdrop, we can readily infer that when the Legislature wrote section 2023.030 to provide that a court "may impose" sanctions for discovery misuse, the choice was deliberate. As part of its concerted response to known deficiencies in the prior discovery sanctions statute, the Legislature gave trial courts a statutory basis for exercising authority to address egregious forms of misconduct not addressed elsewhere in the Act. It seems, by contrast, unlikely that a Legislature concerned with stemming the tide of discovery abuse would have consigned courts confronting patterns of egregious abuse to the choice the City's position would offer them: either attempt to fit the component parts of the pattern into individual method-specific sanctions rulings, or else rely purely on their inherent authority to control the litigation, with no statutory guidelines relevant to that exercise.

## D.

The City worries that understanding section 2023.030 as an independent source of authority to impose sanctions would undermine the carefully calibrated scheme of escalating sanctions reflected in the individual method-specific chapters, under which courts typically must consider imposing monetary sanctions before turning to more severe sanctions such as issue sanctions or evidence sanctions. The City's professed worry is doubly odd. It is odd, first, because this case concerns only monetary sanctions, which are the least serious form of sanctions authorized under the Act. It is odd, second, because

the City acknowledges that courts retain the inherent authority to impose sanctions outside the rubric of the Act (that is, provided the sanctions are nonmonetary sanctions). It is unclear how relegating courts to exercising *nonstatutory* authority to address discovery abuses would help to shore up the *statutory* policies underlying the sanctions provisions of the Act.

The straightforward answer to the City's worry, however, is that a court's authority to impose sanctions under section 2023.030 is not limitless. It is already well-established that a court may not rely on section 2023.030 to override the limitations prescribed by any other applicable sanctions provision in the Act. A court may invoke its independent authority to impose sanctions under sections 2023.010 and 2023.030 only when confronted with an unusual form of discovery abuse, or a pattern of abuse, not already addressed by a relevant sanctions provision. And where it invokes that authority, it is constrained by the long-settled rules generally governing the imposition of discovery sanctions under the Act.

Consistent with the practices outlined in the Civil Discovery Act, trial courts must afford any party or person accused of engaging in an abuse of the discovery process "notice" and an "opportunity for hearing," and courts must consider whether the party or person "acted with substantial justification," or whether "other circumstances make the imposition of the sanction unjust." (§ 2023.030 & subd. (a).) Trial courts must also be mindful not to impose sanctions that exceed "the *reasonable* expenses, including attorney's fees, incurred by anyone *as a result* of" the discovery misconduct. (*Id.*, subd. (a), italics added.) These principles of causation and reasonableness ensure fidelity to the well-established principle that " 'the court may not impose sanctions which are designed

not to accomplish the objects of discovery but to impose punishment.' " (*Fairfield*, *supra*, 246 Cal.App.2d at p. 120; see also *Bauguess*, *supra*, 22 Cal.3d at p. 637 ["Even in the discovery context . . . a purely punitive award of $1,000 in attorney's fees has not been allowed."].)

Considered in light of these limits, the concern expressed in *Bauguess* about the "unfettered and unbridled" (*Bauguess*, *supra*, 22 Cal.3d at p. 639) power to award monetary sanctions for attorney misconduct has no purchase in the discovery context. Unlike the "sweeping" power contemplated in *Bauguess*, which would have operated " 'without appropriate safeguards and guidelines' " (*ibid.*), the power here is cabined: it is reserved for misuses of the pretrial discovery process that fall within the Legislature's definition of discovery misuse (see § 2023.010). Moreover, this inherent authority is tempered by the same procedural safeguards that ordinarily govern the imposition of sanctions under the Civil Discovery Act, and by the requirements of causation and reasonableness. Sanctions are not to be used "to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits" (*Crummer v. Beeler*, *supra*, 185 Cal.App.2d at p. 858), and a more severe sanction is disfavored if a lesser sanction is available (*In re De La Parra*, *supra*, 184 Cal.App.3d at pp. 144–145). Given these long-settled understandings, we see no genuine danger that reading sections 2023.010 and 2023.030 as an independent source of sanctions authority in any way undermines the intended functioning of the statute. Courts have for decades read sections 2023.010 and 2023.030 in just this way. The trial court did not err in relying on those provisions here.

## CONCLUSION

We reverse the judgment of the Court of Appeal.


**KRUGER, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**JENKINS, J.**
**EVANS, J.**
**SNAUFFER, J.**[*]

---

[*] Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  City of Los Angeles v. PricewaterhouseCoopers LLP

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 84 Cal.App.5th 466
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S277211
**Date Filed:** August 22, 2024

_____

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  Elihu M. Berle

_____

**Counsel:**

Michael N. Feuer and Hydee Feldstein Soto, City Attorneys, Kathleen A. Kenealy, Chief Assistant City Attorney, Joseph A. Brajevich, Assistant City Attorney, Julie C. Riley; Browne George Ross O'Brien Annaguey & Ellis, Ellis George Cipollone O'Brien Annaguey, Ellis George Cipollone, Eric M. George, Guy C. Nicholson; Annaguey McCann, Kathryn L. McCann and Jason Y. Kelly for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Julian W. Poon, Casey J. McCracken, Samuel Eckman, Ryan Azad, Daniel J. Thomasch, Lauren J. Elliot and Joseph M. Ortega for Defendant and Respondent.

Orly Ravid for Amicus Project at Southwestern Law School, Joshua D. Cahn, Warren S. Grimes, Michael M. Epstein, Martin J. Tangeman and Erwin Chemerinsky as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kathryn L. McCann
Annaguey McCann LLP
10880 Wilshire Boulevard, Suite 960
Los Angeles, CA 90024
(424) 431-0078

Julian W. Poon
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7758